JAMES J. GEARY vs. THE CITY OF NEW HAVEN.

Third Judicial District, New Haven, June Term, 1903.
TORRANCE, C. J., BALDWIN, HAMERSLEY, HALL and PRENTICE, Js.

The plaintiff agreed with the defendant to build the substructure of a bridge. The contract provided that " the dimensions of piers and abutments shall be as shown on the plans." Upon one of these a perpendicular line indicated the distance from high-water to the bottom of the foundation of the west pier as " twenty-six feet no inches, plus or minus." The plan also showed approximate estimates of masonry. The contract stipulated that the west pier should be founded on rock bottom, and further, that the agreed price of $14 per cubic yard should be full compensation for completing the work, also for " all loss or damage arising from . . .' any unforeseen obstructions or difficulties." In the performance of the work it was found necessary to dredge to the depth of thirty-three feet nine inches for the foundation of the west pier, and the committee found that the work below the twenty-six foot line was worth fifty per cent. more than that above. The plaintiff claimed to recover for all work below said line as extra work. *Held :—*

1. That the plans so referred to were correctly treated as a part of the contract.
2. That the work below the twenty-six foot level was included by the terms of the contract, and therefore the plaintiff was not entitled to recover for it as extra work.

The proper way to correct errors in the admission or rejection of evidence by a committee, is by filing in the trial court a written remonstrance to the acceptance of the report, distinctly stating the alleged erroneous rulings as grounds of the remonstrance. The errors, if any, may then be corrected, and the case recommitted for further hearing or finding.

The statutes and rules concerning motions to the trial judge to correct his finding, or applications to the Supreme Court to rectify an appeal, do not authorize a motion to the trial court, or an application to the Supreme Court, to add to a finding made by a committee or auditor.

Argued June 4th—decided July 24th, 1903.

ACTION to recover for extra work and labor in building the substructure of a bridge, brought to the Superior Court in New Haven County and referred to a committee by whom the facts were found and reported; the plaintiff filed remon-

strances to the acceptance of the amended and supplemental reports, which were overruled (*Thayer, J.*) and judgment was rendered for the defendant, from which the plaintiff appealed. *No error.*

*Hobart L. Hotchkiss*, with whom was *Harry W. Asher*, for the appellant (plaintiff).

*William H. Ely* and *Richard J. Goodman*, for the appellee (defendant).

HALL, J.   In May, 1896, the plaintiff entered into a written agreement with the city and town of New Haven "to furnish all the necessary materials and labor, and to construct and erect in a substantial and workmanlike manner the substructure for a bridge on Grand Avenue, over the Quinnipiac river, . . . of the dimensions, in the manner, and under the conditions" specified in said agreement, which was made a part of the complaint.  By the contract the work was to be completed on the 12th of October, 1896.  It was in fact completed on or about the 15th of September, 1897.

The plaintiff claims to be entitled to recover for extra labor and materials, for damages sustained from delays caused by the defendant, and for the use by the defendant of a temporary bridge constructed by the plaintiff.

The total amount of the plaintiff's bill of particulars, comprising twelve items, is $45,423.21.

The defendant filed an answer denying that the plaintiff had performed any extra work, and that the delays were the defendant's fault, and alleging that the delays were caused by the plaintiff's own incompetency and inferior work.   Thereupon the case was referred to a committee to hear the evidence and report the facts to the court.

The committee reported specifically the facts established by the evidence and relevant to the issues, and practically found in favor of the defendant upon all the controverted and material questions of fact relating to each item of the bill of particulars, excepting as below stated regarding the

first item; and also fully set forth in his report the objections and rulings upon all questions of evidence.

The plaintiff filed a remonstrance to the committee's report, which was overruled by the court. Thereupon he claimed to be entitled to recover upon the report as accepted, under the first item of his bill of particulars, the sum of $1,029.

The overruling of this claim raises the principal question presented by this appeal.

The following is the first item of the bill of particulars:

" To extra work done and materials furnished in the construction of the west rest-pier as ordered by the city engineer, said work consisting of additional masonry required in going down from a depth of 26 feet below mean high-water, as the original plan called for, to a depth of 33 feet, 9 inches, which is the present foundation, $13,352.

" This includes the dredging, and towing of material, and all. incidentals.

| | |
|---|---|
| 242 cubic yards of masonry (extra) . | $5,082.00 |
| 2,600 cubic yards dredging, . . | 5,200.00 |
| Vessel, pumping, and divers, and recutting of stone, &c. . . . . . | 3,070.00 |
| | $13,352.00 " |

The bridge in question is a drawbridge. The pier upon which the draw span rests is referred to as the center pier, and the two upon which the ends of the draw rest—the westerly one of which is called in the above item the " west rest pier," —are called the east and west piers.

It is the plaintiff's contention that by the written contract and plans he agreed to build said west pier to a depth below high-water mark of twenty-six feet only, at the contract price of $14 for each cubic yard of masonry ; that he was required to construct it to a depth of thirty-three feet and nine inches below high-water mark ; that the building of the pier below the twenty-six foot line was much more expensive per cubic yard than the building of it above that line ; and that under the report of the committee he is entitled to recover the ex-

tra expense, above $14 per cubic yard, for the building of the pier below said twenty-six foot line.

The committee reports that it was found necessary to dredge to the depth of thirty-three feet and nine inches for the foundation of said west pier; that the construction of the masonry below the twenty-six foot line was worth fifty per cent. more than that above the line, and that the 147 cubic yards of masonry below that line was worth $21 per cubic yard for construction, amounting, after deducting the sum of $14 per cubic yard already paid the plaintiff for the construction below the twenty-six foot line, to the sum of $1,029.

The committee further finds that "there was no extra work done or materials furnished in the construction of the west rest-pier as ordered by the city engineer, as set forth in item No. 1 (of bill of particulars), unless as a conclusion of law from the facts hereinbefore stated the work on the west rest-pier below the 26 feet mentioned in the plans must be held as extra work; and if as a conclusion of law the court holds that the plaintiff is entitled to extra compensation, . . . the amount due is $1,029."

Whether the plaintiff is entitled to recover for extra work under this item becomes, therefore, a question of construction of the written contract.

As sustaining his claim, that by the provisions of the contract the work below the twenty-six foot line is extra, the plaintiff calls our attention, among other things, to this language of the contract: under the head of *Masonry:* "The dimensions of piers and abutments shall be as shown on the plans on file in the office of the city engineer;" and under the head of *General Provisions:* "All work embraced in this contract shall be built truly to the line and gradient throughout in a first-class manner, and according to the plans and directions furnished from time to time by the engineer."

The plaintiff claims that it appears by the map, *Exhibit C,* one of the plans referred to by the above language, that at a depth of twenty-six feet below high-water mark a rock foundation would be found upon which this west pier could be con-

structed. With regard to this map, thus made a part of the contract, the committee finds that the city engineer prepared a map or plan, drawn to a scale, of the work to be done under the contract, which showed, among other things, " the substructure of the new bridge to be constructed, and in that connection perpendicular lines measured from high-water downwards. In that connection a perpendicular line in connection with the center pier indicated forty feet, no inches, from high-water to bottom of timber foundation, and a horizontal line at the bottom, marked 'Approximate depth of timber foundation if founded on rock.' In connection with the east rest-pier a perpendicular line indicated thirty-two feet, no inches, plus or minus, from high-water to foundation, the words plus or minus being indicated by a sign . . . In connection with the west rest-pier a perpendicular line indicated twenty-six feet, no inches, plus or minus, from high-water to bottom of foundation. The plan also showed approximate estimates of masonry . . . in each of the three piers." It is found that this plan, *Exhibit C*, was referred to in the advertisement for bids, and was examined by and explained to the plaintiff.

As to the significance of the signs plus and minus after the figures, as above stated, and of the statement that certain estimates and figures were approximate, the finding of the committee is that " these signs and words are used by engineers in drawing plans to inform those bidding for a job that the figures are not exact, and show that the exact depth at which a suitable foundation can be found cannot be given by the engineer, but that they may vary ;" and that " the plans as drawn did, in fact, indicate, in the ordinary, proper way, that the figures on the plans were not exact, and conveyed that information."

Even the measurements, statements and signs upon this map (*Exhibit C*), considered apart from certain written provisions of the contract pertinent to them, and especially when examined in connection with the above facts from the committee's report, fail, therefore, to show that the undertaking of the plaintiff was to build the west pier but twenty-

six feet below high-water mark. On the contrary, the perpendicular line at the side of the west pier, evidently designed to extend from high-water mark to rock foundation, the signs showing that the given measurements of that line were not intended to be exact, the statement that the given depth of the rock foundation of the center pier and the given estimates of the masonry of the three piers were approximate, seem to indicate rather that the pier in question was to be built either to a rock foundation—the depth of which below high-water was uncertain—or to some other foundation, the depth of which was uncertain.

But turning to the written contract we find it expressly provides that the east, west, and center piers are to be founded on rock bottom, except that the center pier may be founded on such hard gravel bottom, acceptable to the engineer, as may be found before rock is encountered.

Again, with regard to the payment which the plaintiff is to receive, the contract contains this provision : " The said party of the second part (the plaintiff) hereby agrees to receive the following price as full compensation for furnishing all labor and materials in building and in all respects completing the aforesaid work in the manner and under the conditions before specified; also, all loss or damage arising out of the nature of the work aforesaid, or from the action of the elements, or from any unforeseen obstructions or difficulties which may be encountered in the prosecution of the work, and for well and faithfully completing the same, and the whole thereof, in the manner hereinbefore specified, viz.: . . . For each cubic yard of masonry in the pivot (center) pier, the sum of fourteen dollars, ($14.00). . . For each cubic yard of masonry in the new piers at each end of the draw span (east and west piers), the sum of fourteen dollars, ($14.00). (The charge of $14 per cubic yard of masonry included the expense of excavation, etc., charged as separate items in the first item of the bill of particulars.)

The contract further provides that the engineer " shall have the power also, with the consent of the joint committee (Committee on Bridges of the Board of Public Works of

the city, and the selectmen of the town of New Haven), to vary, extend, or diminish the quantity of the work during its progress, without vitiating the contract."

After dredging thirty-three feet and nine inches for the west pier foundation, it was in fact, though with the consent of the engineer, founded on other than rock bottom. While the plaintiff excavated seven feet and nine inches below the estimated depth for that pier, it is found that by reason of having been required to dredge less than the estimated depths for the east and center piers, the total depth of dredging for the three piers, in excess of the estimated depth, was one foot and eleven inches, and the excess of the actual amount of masonry in the three piers, over the estimated amount, was sixteen and sixty-four hundredths cubic yards.

All these facts, showing that the written contract, of which the map, *Exhibit C*, was properly held to be a part, provides for the building of the west pier to rock bottom; that the depth of such foundation was uncertain; that the amount of masonry was only estimated approximately upon the plans; that no different price was fixed for construction below than for that above the estimated depth; and that the contract price for construction, instead of being a gross sum for a definite or estimated amount of masonry, was a certain sum for each cubic yard,—furnish sufficient reasons for sustaining the decision of the trial court, that the work on the west pier below the said twenty-six foot line was not extra work for which the plaintiff was entitled to compensation above the fixed contract price of $14 per cubic yard, and that having been paid that price for the claimed extra work he could not recover under the first item of the bill of particulars.

The remaining items of the bill of particulars do not require discussion. The allegations of fact upon which they are based have been conclusively decided by the committee adversely to the plaintiff.

Numerous reasons of appeal are assigned, based upon the action of the trial court in overruling the plaintiff's remon-

strance to the committee's report, and in denying certain motions of the plaintiff concerning a correction of the record. Generally, the grounds of the remonstrance were that the committee had failed to specifically and properly report the facts relevant to the issues and established by the evidence, and to make various exhibits a part of his report, and to properly state the objections and rulings upon evidence.

There appears to be no good reason for stating these grounds in detail here. They were all properly overruled by the trial court; many of them because the facts alleged in the remonstrance were not proved, and others because the alleged facts were insufficient. The court correctly ruled that the committee had adopted the right method of reporting the facts and of stating his rulings upon questions of evidence.

Another reason of appeal is that the trial court did not sustain plaintiff's exceptions to rulings upon questions of evidence, taken upon the trial before the committee, and did not reject the committee's report on account of said rulings.

It does not appear that the trial court was asked to decide whether the rulings of the committee upon questions of evidence were correct, or was asked to reject the report on account of such rulings, or that the court did decide these questions of evidence.

The proper way of correcting errors in the admission or rejection of evidence, in a trial before a committee, is by a written remonstrance to the acceptance of the committee's report, filed in the trial court, where such errors, if there are any, may be corrected, and the case may be recommitted for a further hearing or finding; and in such remonstrance the claimed erroneous rulings should be distinctly stated as grounds of remonstrance. *Kennedy* v. *Scovil*, 14 Conn. 61, 71; *Maples* v. *Avery*, 6 id. 20, 23; *Redfield* v. *Davis*, ibid. 439, 443.

In the remonstrance filed and decided by the trial court, the plaintiff complains, not of the rulings of the committee upon questions of evidence, but only of the manner in

which the rulings were stated in the report. While, therefore, we are not called upon to review these rulings of the committee, we deem it proper to say that we have examined them, and that we are satisfied that they are correct, and that they present no questions which require discussion here.

The facts which the plaintiff, by his motion to the Superior Court, and his application to this court, asked to have added to the finding of the committee, were of an evidential character, and were not necessary to enable the plaintiff to present, either to the Superior Court or this court, all proper questions of law arising upon the committee's report or upon this appeal. The granting of such a motion or such an application, to add to a finding made by a committee or auditor, is not authorized by our statutes or rules concerning motions to a trial judge to correct his finding, or applications to this court to rectify an appeal.

There is no error.

In this opinion the other judges concurred.