W. G. MALTBY, INCORPORATED, *vs.* THE ASSOCIATED REALTY COMPANY.

MALTBIE, C. J., HAINES, HINMAN, BANKS AND AVERY, Js.

Argued December 2d, 1931—decided February 9th, 1932.

*Robert J. Woodruff,* with whom was *Louis Shafer,* and, on the brief, *Edward J. Brennan,* for the appellant (defendant).

*Joseph Weiner,* with whom was *William Gitlitz,* for the appellee (plaintiff).

AVERY, J. From the finding, these facts appear: February 25th, 1930, the defendant corporation owned real estate in New Haven, with a blacksmith shop and office building located thereon. Frank Kenna was the president of the corporation, and J. W. Harney, its agent, was authorized to procure tenants for this property. G. W. Cawley was the president of the plaintiff corporation, and also of an allied corporation, G. W. Cawley, Incorporated. Some time prior to February 25th, 1930, Harney had been in negotiation with Cawley and endeavored, through him, to lease the blacksmith shop to the plaintiff, and the office to the Cawley Company. As the result of these negotiations on that date, Cawley wrote a letter,[a] which was sent to and received by the defendant.

---

[a]New Haven, Conn., February 25, 1930.

Mr. J. W. Harney,
393 Chapel Street, New Haven, Conn.
Dear Sir: Confirming our conversation of this morning, at your office, we will lease shop and office space on Chapel Street for one year, with privilege of renewing lease for five years, upon terms and conditions as follows:

We, W. G. Maltby, Incorporated, will lease blacksmith shop at     Chapel Street, formerly occupied by Farrar. Rent to be $45 per month. You to run 3″ steam line to point within building. You to furnish steam for our steam hammers. We to have privilege of locating a 275 gallon oil storage tank outside of and alongside of building above ground, also of building a small lean-to at side of building as a protection for our stock.

We, the G. W. Cawley Company, Incorporated, will lease office at     Chapel Street. Space to be one flight up, on corner of building, facing street and blacksmith shop. Rent to be $12.50 per month, including light and heat. You to build partition making room approximately eighteen feet long.

Both leases to start when spaces are ready for occupancy.

Yours very truly, ..........

March 5th, 1930, the defendant wrote a letter,[b] which was delivered to Cawley and received by him as president of both the plaintiff and the Cawley companies. Shortly after the receipt of this letter, the plaintiff corporation began to move its manufacturing plant into the blacksmith shop, and the Cawley Company moved its furniture into the office. The plaintiff has occupied the blacksmith shop continuously until the present and paid rent at the rate of $45 per month. The Cawley Company has occupied the offices up to the present and paid rent at the rate of $12.50 per month. In the conduct of its business, the plaintiff uses several large pieces of machinery and many small tools, and the expense of moving into the blacksmith shop was approximately $3,000, and occupied about six weeks. In the conduct of its business, it was necessary for the plaintiff to have a supply of steam in order to operate a steam hammer for forging. It is the only concern in the city of New Haven operating a steam hammer for that purpose, and a large number of customers come to it directly to make forgings and repair broken tools. A large proportion

---

[b] The Associated Realty Corporation
New Haven, Connecticut

March 5, 1930.

C. W. Cawley and Company, Inc.,
40 Whitney Avenue, New Haven, Connecticut.

Gentlemen: Confirming your letter of February 25th, we will lease the blacksmith shop on Chapel Street formerly occupied by Farrar for monthly rent of $45 paid monthly in advance. We will furnish you with a two inch steam line to point inside on the above mentioned building.

We will also lease the office on the second floor, west side, at 401 Chapel Street to you for $12.50 per month, likewise paid in advance. We will put up necessary partitions to divide this office. Said lease to take effect at once.

Very truly yours,
The Associated Realty Corporation, Frank Kenna,
FK:L                                        Frank Kenna, President.

of its orders are for emergency jobs, and work has to be started promptly and completed as quickly as possible to enable the plaintiff to hold its trade. The nature of the work done by the plaintiff requires the use of a steam hammer, and if steam is not delivered, the plaintiff will be unable to operate its hammer, and be obliged to go out of business or move to another location. The plaintiff's tools are of considerable value in the conduct of its business, but would be of little value if sold.

While the plaintiff was moving its machinery into the shop, the defendant ran a two and one half inch steam pipe into it, which was later connected with the plaintiff's steam hammer. Until about the middle of July, the defendant was unable to furnish steam and, on that account, rebated to the plaintiff four months' rent of the shop. After the middle of July, for several months, the defendant furnished steam at eighty pounds pressure, but in the fore part of January, 1931, by installing a valve on its own premises, the defendant cut down the hours during which it furnished steam to two a day, from 12.00 to 2.00 p.m., and February 11th, shut off the steam altogether.

January 15th, 1931, the plaintiff gave notice in writing of its election to renew the lease. The trial court concluded that the letter of February 25th, 1930, was a proposal; that of March 5th a counter-proposal embodying, by reference, all the terms set forth in the letter of February 25th, except as to the size of the steam pipe, and also fixing the time for the commencement of the term; and that this counter-proposal was accepted, and the contract completed when the plaintiff went into possession. The defendant assigns as error the conclusion of the court holding that there was a lease for a year with the right of a five-year renewal; the claim of the defendant being that, upon

the above facts, there was no lease; or if so, only one from month to month. Error is also assigned in certain rulings on evidence.

The contract is definite as to the premises to be let, the time when the term was to commence, the duration of the term, the rent to be paid, and was, as between the parties, a valid lease of the premises. *O'Leary* v. *Skilton*, 102 Conn. 475, 479, 129 Atl. 45; *Wall* v. *Stimpson*, 83 Conn. 407, 409, 76 Atl. 513. The defendant's letter of March 5th was addressed to Cawley and received by him as president of both companies, both of which went into possession and paid rent, which was accepted by the defendant. "In case of a bilateral contract acceptance of an offer need not be express but may be shown 'by any words or acts which indicate the offeree's assent to the proposed bargain.'" *Raff Co.* v. *Murphy*, 110 Conn. 234, 239, 147 Atl. 709.

The plaintiff's offer of February 25th, set forth in the footnote, was stated to be with the "privilege of renewing lease for five years." January 15th, 1931, and before the expiration of the term, the plaintiff gave written notice of its election to exercise the privilege. "Whether a clause in a lease is a covenant of renewal or an agreement for an extension, depends upon the intention of the parties to the lease, and the use of the word 'renewal,' although it imports the giving of a new lease like the old one (*Cunningham* v. *Pattee*, 99 Mass. 248, 252), does not necessarily indicate that it is used in this strict and technical sense; the entire lease may determine otherwise." *Freiheit* v. *Broch*, 98 Conn. 166, 169, 118 Atl. 828; *City Coal Co.* v. *Marcus*, 95 Conn. 454, 460, 111 Atl. 857. There is no express covenant on the part of the lessor to enter into a new lease, and we think the agreement in this case is to be construed as one for an extension rather

than a covenant of renewal in the strict sense; and that the tenant, who had the privilege of renewal by giving notice to the landlord before the termination of the lease, had done all required to extend its stipulations and the occupation of the premises through the additional years. *Orr* v. *Doubleday,* 223 N. Y. 334, 340, 119 N. E. 1064.

Plaintiff's proposal to the defendant contains the phrase: "You to furnish steam for our steam hammers." In the letter of March 5th from the defendant, it states: "We will furnish you with a two inch steam line to point inside on the above mentioned building." The trial court permitted Cawley, as a witness, to introduce a letter written by him on February 11th, 1930, before the first proposal, referring to the steam line, and also to testify as to conversations had with Harney in reference to that matter. This testimony was offered and received by the court for the purpose of showing the meaning of the term "furnish you with a two inch steam line" as used in the agreement, and was admissible for that purpose. "This understanding of the parties was properly considered by the trial court, not for the purpose of ascertaining any unexpressed intent, but in order to determine the intent they meant to express by the phrase they used." *Gray* v. *Greenblatt,* 113 Conn. 535, 539, 155 Atl. 707; *Mazzotta* v. *Bornstein,* 104 Conn. 430, 439, 133 Atl. 677; *In re Curtis-Castle Arbitration,* 64 Conn. 501, 514, 30 Atl. 769; *Murphy* v. *Schwaner,* 84 Conn. 420, 428, 80 Atl. 295.

The testimony of Cawley that, after the plaintiff went into possession, the defendant remitted four months' rent because unable to furnish steam was admissible as showing the practical construction of the contract by the parties thereto. "Such evidence, in cases of doubtful construction, is strong presumptive

evidence of intention of the parties that the contract should be construed in accordance with their own practical construction." *Volk* v. *Volk· Mfg. Co., Inc.,* 101 Conn. 594, 601, 126 Atl. 847; *Safford* v. *Morris Metal Products Co.,* 97 Conn. 650, 653, 118 Atl. 37.

The trial court also permitted Cawley and others, over objection, to testify as to the worth of the Maltby Company as a going concern, and the effect upon its business of inability to make forgings promptly because of lack of steam to work its trip-hammer. Testimony of this character was properly admitted by the court. "When equitable relief is demanded, a considerable latitude in the presentation of evidence should be permitted commensurate with the far-reaching limits of that subject, and its proper use should be governed by basing the relief granted or denied upon the exercise of a sound discretion by the trier." *Pope Foundation, Inc.* v. *New York, N. H. & H. R. Co.,* 106 Conn. 423, 434, 138 Atl. 444; *Kaspar* v. *Dawson,* 71 Conn. 405, 408, 42 Atl. 78; *Hoadley* v. *Seward & Son Co.,* 71 Conn. 640, 645, 42 Atl. 997.

There is no error.

In this opinion the other judges concurred.