GEORGE T. BOUCHER ET ALS. *vs.* PATRICK GODFREY ET ALS.

MALTBIE, C. J., HAINES, BANKS, AVERY and JENNINGS, Js.

Argued February 7th—decided April 3d, 1935.

*George W. Crawford,* for the appellants (plaintiffs).

*Jeremiah D. Shea,* with whom was *John Clark Fitz-Gerald,* and, on the brief, *David E. FitzGerald,* for the appellees (defendants).

AVERY, J.  The plaintiffs in this case were employed by The Connecticut Company in supervisory positions, classified as starters, inspectors, dispatchers and car-house foremen or were formerly employed in such positions but have been reduced to the ranks of motormen, conductors and bus operators as the result of economic conditions and lessened demand by the company in the last few years for employees in the plaintiffs' class. They brought this action against The Connecticut

Company and against what was known as the Joint Conference Board and sought an injunction to restrain the company from violating rights of seniority claimed by the plaintiffs. They also ask for a declaratory judgment finding and determining their seniority rights. The case was tried to the court and judgment entered for the defendants, and the plaintiffs have appealed.

The entire controversy in the court below and upon this appeal turns upon the meaning and effect of § 50 of the rules of the company which, at the time this action was brought, contained the following provision: "When a conductor, motorman or bus operator takes an official position he will not advance in his rating on the board during the period he is serving in such official position, provided he continuously retains such position more than six months."

The finding in the case is quite long and an attempt to set forth the facts in detail would extend this opinion to inordinate length and accomplish no useful purpose. Such facts as are essential to a consideration of the questions of law involved in this appeal are summarized as follows: The Connecticut Company operates a public utility, engaged in railway and bus transportation in the cities of Hartford, Bridgeport, New Haven and the localities surrounding them in eastern and central Connecticut. At the time of the commencement of this action, its operators totaled, in round numbers, about a thousand men. Its operations are carried on through four divisions, known as those of Bridgeport, Hartford, New Haven and New London. Between the years 1904 and 1910, there was inaugurated in several of the divisions a movement which resulted locally in what was termed the "bid-in board" or "run board," which meant that a list of employees was maintained, based upon their continuous employment in the order of their seniority in the service.

Several years previous to the year 1912, it became the practice of the company, as a result of an agreement with its employees, to make promotions or appointments to the runs most desirable through the operation of the "bid-in" board, that is, in the order of the dates of continuous employment of the employees by the company. About ninety per cent of the employees operating buses and trolley cars belonged to the trolleymen's union, known officially as The Amalgamated Association of Street Car and Electrical Railway Employees of America. In negotiating agreements for wages and working conditions, the company has never recognized the union as such, but has dealt with the men through an employees' committee known as the joint conference board. This board consisted of twelve members elected by the members of the union, a certain number being chosen from each division except the New London-Norwich division, which was never represented.

In 1912, the first formal agreement was entered into between the company and the Joint Conference Board which became a part of the rules and regulations appearing in the book of rules prepared by the company for the guidance of its employees, and with which every employee was required to become familiar. In this agreement, § 50 first appeared, and contained a provision that a starter, dispatcher or other transportation official holding his place on the board who returned to the cars of his own volition should go to the foot of the extra list. Between the years 1912 and 1932, the company entered into a series of short term contracts with its employees relative to wages and conditions of employment; § 50 appeared in all these contracts in substantially its original form except that since 1921, as a result of negotiations at that time between the company and the committee, the provision

concerning the return of an employee to the cars at his own volition was omitted from such agreements.

The plaintiffs belonged to a class of employees who act as foremen over the general class of transportation operators to which the defendant employees belong, supervising but not having any disciplinary powers nor any decision on questions of policy. They are not executives or officers of the company in any sense. Their positions have certain advantages over those of motormen and car operators in that they enjoy no diminution of pay in case of sickness and, until recently, had vacation privileges. All but four of them accepted promotions after the adoption of § 50 in 1912. At that time, all had knowledge of the rule. All the plaintiffs, except one, are or were members of the union and acquiesced in the rule from the date of its first adoption until the present time. All but one had opportunity to vote in the selection of the members of the joint conference board, and, with the exception of four, had the right to vote upon the rule itself. All the employees of the company, whether members of the union or not, participated equally in the benefits received from the agreements and arbitrations resulting from the conferences between the officials of the company and the joint conference board. None of the employees ever requested or attempted to be separately represented in the negotiations and they accepted, without protest, the wage scales and working conditions promulgated by the company as the result of the agreements.

The claim of the plaintiffs in the trial court and here is that if they are demoted from their supervisory positions to the ranks, the time during which they held their supervisory positions should be added to the time employed prior to promotion in considering their seniority. They contend that, by virtue of the prac-

tices of the company at the time they were promoted, rights of seniority existed in their favor whereby in case of their return to the ranks they were entitled to be restored to the same position as if they had remained there. If such rights of seniority existed in favor of the plaintiffs, it must be by virtue of some contract between them and the company, either express or implied. It is evident from the finding that the term of service of all the employees of the company involved in this controversy was indefinite as to duration, and either party could have legally terminated the employment at any time with or without cause; *Coppage* v. *Kansas,* 236 U. S. 1, 8, 35 Sup. Ct. 240; *Watson* v. *Gugino,* 204 N. Y. 535, 541, 98 N. E. 18; *Cornellier* v. *Haverhill Shoe Mfrs. Asso.,* 221 Mass. 554, 109 N. E. 643, L. R. A. 1916C, 218, 220; *Resener* v. *Watts, Ritter & Co.,* 73 W. Va. 342, 80 S. E. 839, 51 L. R. A. (N. S.) 629, 631; 39 C. J. 44; except so far as affected by the short term agreements entered into between the company and the representatives of the men from and after 1912, and these short term agreements only affected the rights of the parties for the period while each agreement remained in force. If the plaintiffs were so represented in the proceedings under which the wages and working conditions were changed that, as between them and the company, those changes were obligatory on the company, they were equally binding upon the plaintiffs as changes affecting the rights of the parties; if the plaintiffs were not bound to them in this way, then, by continuing their employment with knowledge of the changes, particularly as regards those which became a part of the rules of the company, they impliedly accepted them as terms of the employment.

The appellants further contend that since 1912 the rule, as interpreted in the light of the conduct of the parties, had been in accordance with their contention

and that only in 1930, with the decline in industrial conditions, had the present interpretation been insisted upon; and they maintain that the practical construction of the section by the parties for so many years should be taken as expressing its true meaning. With reference to this contention, it appears from the finding that at different times since 1912, eight men were returned to the "bid-in" board as motormen or conductors by the company in violation of the section in question. The record, however, does not disclose that any employees were deprived of employment by any of these violations. On one occasion, however, in 1923 when it appeared to the chairman of the grievance committee of the motormen and conductors of the Bridgeport division that a repetition of such violations might become embarrassing, he objected to a repetition of the practice, and in consequence of his objection the manager of the company at Bridgeport agreed that in the future no further exception should be made to the operation of the section. These facts fall short of showing a consistent practice by both parties in consonance with the appellants' contention. The meaning of the section is clear. It is only in cases where the words of the writing are ambiguous or of doubtful import when read in connection with the entire instrument that resort can be had to evidence of the acts of the parties thereunder, as an aid in arriving at its meaning by the practical construction of the parties. *Adams* v. *Turner,* 73 Conn. 38, 45, 46 Atl. 247. *Parker* v. *Selden,* 69 Conn. 544, 552, 38 Atl. 212; *Smith & Co.* v. *Russell Lumber Co.,* 82 Conn. 116, 118, 72 Atl. 577. The meaning of the contract cannot be stretched by the acts of the parties beyond what the language will bear. Amer. Law Institute Restatement, Contracts, Vol. 1, § 235 (e). In interpreting § 50, we must be governed, not by any unexpressed intent of the com-

pany or the parties to the various agreements, but by the intent expressed in the terms of the rule itself. "The aim of interpretation is to ascertain what a writer intended by what he said, and not either to put words into his mouth or to give effect to that which it may be thought he either intended to say or would have wished to say but didn't." *Ziulkoski* v. *Barker,* 94 Conn. 491, 494, 109 Atl. 185; *Maltby, Inc.* v. *Associated Realty Co.,* 114 Conn. 283, 289, 158 Atl. 548; *Gray* v. *Greenblatt,* 113 Conn. 535, 539, 155 Atl. 707.

The plaintiffs assert that because the defendants permitted starters to return to the "run-in" board without loss of advance in rating, they are now estopped from enforcing a contrary meaning to the rule. It does not appear, however, that because of the failure of the company to apply the rule in a few instances between 1912 and 1923 the plaintiffs were in any way misled or in any way induced to act differently than they otherwise would have done. An essential element to constitute an estoppel is thus lacking. *Newfield Building Co.* v. *Mohican Co.,* 105 Conn. 488, 501, 136 Atl. 78; *Morris* v. *Brown,* 115 Conn. 389, 393, 162 Atl. 1.

The appellants make the claim that the rule exposed them to the tyranny of the will of others, was void as against public policy, inequitable and unfair. The finding shows that more than ninety per cent of the employees of the defendant were members of the union; that the joint conference boards were elected by the union members; that they were dealt with by the company not as members of the union but as representatives of all the employees; that none of the unorganized employees of the company asked to be represented on the board or objected to any of the contracts made in behalf of the employees between the company and the board; and that none of the agree-

630

ments obtained any advantage for the members of the union over the other employees who were not members, or made any distinction between the employees by reason of their membership in that organization. It further appears that upon two occasions, when the joint conference board and the company were unable to agree to terms, the matter was submitted to arbitration and the agreement entered into was the result of the finding of the arbitrators selected for that purpose. We see no basis in the finding to support the contention that the agreements reached were unfair or illegal, or subjected these plaintiffs to the tyranny of others.

There is no error.

In this opinion the other judges concurred.