## The Batter Building Materials Company et al. *v.* Nathan N. Kirschner et al.

Inglis, C. J., Baldwin, O'Sullivan, Wynne and Daly, Js.

2

Argued November 2—decided December 21, 1954

*Joseph I. Sachs,* with whom, on the brief, were *Harry L. Edlin* and *Arthur S. Sachs,* for the appellants (plaintiffs).

*Jacob Belford,* with whom was *Richard Belford,* for the appellees (defendants).

O'SULLIVAN, J. The named plaintiff is assignee of Alexander and Peter Mislow, partners engaged in the building business. The latter have joined in bringing the action and will be referred to as the plaintiffs. They have sued the defendants to recover the reasonable value of labor and materials furnished in the construction of a house and garage. Subsequent to the return of the writ to court, the defendants applied for a stay of the action until the subject matter of the suit was submitted to and determined by arbitration. The court granted the stay and the plaintiffs have appealed.

The finding, which is not subject to material correction, may be summarized as follows: Sometime before September, 1952, Samuel Gitlitz, at the request of the defendant husband and wife, prepared plans and specifications for a one-family house and garage to be erected on their lot in Hamden. Gitlitz has never been licensed as an architect by the state under the provisions of chapter 224 of the General Statutes. He has been practicing for sixteen years as a designer, so-called, drawing plans and specifications and supervising construction work. It was in this capacity that he was engaged by and worked for the defendants.

On September 6, 1952, the plaintiffs entered into a written contract to erect the buildings for the defendants. Before executing the contract, the plaintiffs had received, and their estimate was based

upon, a set of the plans and specifications prepared by Gitlitz. During the course of the construction, disputes arose between the parties, as a result of which the case at bar was instituted. Prior to the bringing of the action, neither party requested the submission of these disputes to arbitration.

The contract into which the plaintiffs entered on September 6, 1952, was drafted by the defendants' attorney. Although erroneously described in the contract as an architect, the Samuel Gitlitz referred to was the Samuel Gitlitz who had drawn the plans and specifications. The defendants have at all times denied any present liability to the plaintiffs under the contract. The defendants are ready and willing to proceed to arbitrate whatever disputes exist between the parties. Other facts dealing with the contractual provisions will be subsequently stated.

The complaint alleges that the plaintiffs had proceeded with the work covered by the contract and that they have already received $6800 from the defendants. It further alleges that the brown plaster was finished on April 16, 1953, and that, although an additional $5000 then became due under the terms of the contract, the defendants not only refused to pay it but, without justifiable cause, ordered the plaintiffs off the job.

On the basis of the foregoing, the court concluded that the complaint presented an arbitrable matter and that, since the contract provides for arbitration and makes it a condition precedent to litigation, the present action should be stayed.

Save as noted hereafter, the plaintiffs do not question the legality, irrevocability and enforceability of their agreement to arbitrate or the power of the court to stay an action based on a dispute otherwise arbitrable. See General Statutes §§ 8151,

8152. It is their claim, however, that the only disputes which they agreed to arbitrate were those covered by paragraph 4 of the written contract of September 6, 1952. That paragraph reads: "Should any dispute arise respecting the true value of the extra work or works added, deviated, altered, or omitted, the same shall be valued by two competent persons—one employed by the Owner and the other by the Contractors—and those two shall have the power to name an umpire, whose decision shall be binding on all parties." If this were the sole pertinent provision of the contract, the court's order in staying the litigation instituted by the plaintiffs might be difficult to justify, since paragraph 4 refers only to disputes arising out of extra work or changes ordered by the defendants, and since the subject matter of the complaint does not embrace such work or changes. A party to a contract is under no obligation to arbitrate a dispute outside the scope of those which he has agreed to arbitrate. *Matter of Marchant* v. *Mead-Morrison Mfg. Co.*, 252 N.Y. 284, 299, 169 N.E. 386; see *Pratt, Read & Co.* v. *United Furniture Workers,* 136 Conn. 205, 208, 70 A.2d 120.

The court, however, relied upon a provision appearing in a pamphlet which the parties did not prepare and upon which they did not place their signatures. The situation was this: A copy of the specifications prepared by Gitlitz had been given to the plaintiffs to aid them in estimating the cost of the job. The written contract executed by the plaintiffs on September 6, 1952, recites that "[a]ll of the work contemplated within the terms of the agreement [is] more fully set forth and described in certain plans and specifications drawn by one, Samuel Gitlitz, an architect." The specifications which thus became a part of the contract provide that "[t]he General

Conditions as contained in pages 1-10 inclusive, Form A2, as issued by the American Institute of Architects, shall govern in all cases, except where they conflict with the Special Conditions." The court was warranted in finding that articles 39 and 40 of the American Institute of Architects Form A2 (Sept. 1, 1951), printed on pages 9 and 10 thereof, were included within the agreement of the parties.[1]

Although the plaintiffs argue to the contrary, it is of no avail to them that the provisions for

---

[1] "Art. 39. ARCHITECT'S DECISIONS.—The Architect shall, within a reasonable time, make decisions on all claims of the Owner or Contractor and on all other matters relating to the execution and progress of the work or the interpretation of the Contract Documents.

"The Architect's decisions, in matters relating to artistic effect, shall be final, if within the terms of the Contract Documents.

"Except as above or as otherwise expressly provided in the Contract Documents, all the Architect's decisions are subject to arbitration.

"If, however, the Architect fails to render a decision within ten days after the parties have presented their evidence, either party may then demand arbitration. If the Architect renders a decision after arbitration proceedings have been initiated, such decision may be entered as evidence but shall not disturb or interrupt such proceedings except where such decision is acceptable to the parties concerned.

"Art. 40. ARBITRATION.—All disputes, claims or questions subject to arbitration under this contract shall be submitted to arbitration in accordance with the provisions, then obtaining, of the Standard Form of Arbitration Procedure of The American Institute of Architects, and this agreement shall be specifically enforceable under the prevailing arbitration law, and judgment upon the award rendered may be entered in the court of the forum, state or federal, having jurisdiction. It is mutually agreed that the decision of the arbitrators shall be a condition precedent to any right of legal action that either party may have against the other.

"The Contractor shall not cause a delay of the work during any arbitration proceedings, except by agreement with the Owner.

"Notice of the demand for arbitration of a dispute shall be filed in writing with the Architect and the other party to the contract. If the arbitration is an appeal from the Architect's decision, the demand therefor shall be made within ten days of its receipt; in any other case the demand for arbitration shall be made within a

the arbitration contemplated by articles 39 and 40 are found in a writing referred to in the specifications, which in turn are incorporated by reference into the written contract of September 6. Where, as here, the signatories execute a contract which refers to another instrument in such a manner as to establish that they intended to make the terms and conditions of that other instrument a part of their understanding, the two may be interpreted together as the agreement of the parties. See *Boston Lumber Co.* v. *Pendleton Bros., Inc.,* 102 Conn. 626, 631, 129 A. 782; 1 Corbin, Contracts, p. 97; 12 Am. Jur. 781, § 245. The incorporation by reference of the provisions in Form A2 distinguishes the present case from the facts in *Samson* v. *Bergin,* 138 Conn. 306, 310, 84 A.2d 273. Nor is a party allowed, in the absence of accident, fraud, mistake or unfair dealing, to escape his contractual obligations by saying, as each of the plaintiffs does here, that he did not read what was expressly incorporated as specific provisions of the contract into which he entered. See *Dinini* v. *Mechanics Savings Bank,* 85 Conn. 225, 228, 82 A. 580; *West* v. *Suda,* 69 Conn. 60, 62, 36 A. 1015.

The plaintiffs, however, maintain that, even though articles 39 and 40 of Form A2 are within

reasonable time after the dispute has arisen; in no case, however, shall the demand be made later than the time of final payment, except as otherwise expressly stipulated in the contract.

"The arbitrators, if they deem that the case requires it, are authorized to award to the party whose contention is sustained, such sums as they or a majority of them shall deem proper to compensate him for the time and expense incident to the proceeding and, if the arbitration was demanded without reasonable cause, they may also award damages for delay. The arbitrators shall fix their own compensation, unless otherwise provided by agreement, and shall assess the costs and charges of the proceeding upon either or both parties."

the agreement, the defendants are precluded from demanding arbitration because of their failure to provide an architect on the job. The statutes of this state did not prohibit Gitlitz from engaging in architectural work. General Statutes, c. 224. They merely forebade his practicing that work under the title of "architect." He referred to himself on the plans and specifications not as an architect but as a designer. The fact that the parties to this litigation used the word "architect" rather than "designer" is of no moment in the absence of any claim of fraud, accident, mistake or unfair dealing advanced by the plaintiffs. It clearly was the intention of the parties that the word "architect" should refer to Gitlitz, the person who had drafted the plans and prepared the specifications and who was to make the decisions under the contract. Under the circumstances, we deem the use of the word "architect" as of no consequence. See *Bacigalupi* v. *Phoenix Building & Construction Co.,* 14 Cal. App. 632, 640, 112 P. 892.

Still another claim of the plaintiffs is that the court erred in ordering a stay because, they maintain, the defendants have repudiated their contract (1) by refusing to make payments in conformity with the terms, (2) by ordering the plaintiffs off the job, and (3) by denying that the defendants are under any liability to the plaintiffs.

A question which has frequently been before the courts is whether an arbitration clause relating to future disputes between the parties to the contract containing the clause remains effective for the purpose either of compelling arbitration or, as here, of serving as the basis for a stay of pending litigation in those instances where the contract has been repudiated or breached or where liability has been denied. In 1915 the question was discussed in a case

reaching the House of Lords. *Jureidini* v. *National British & Irish Millers Ins. Co.,* [1915] A.C. 499, 505 (see 6 Williston, Contracts [Rev. Ed.] p. 5372). In expressing himself on the matter, Lord Haldane indulged in the provocative statement that "when there is a repudiation which goes to the substance of the whole contract I do not see how the person setting up that repudiation can be entitled to insist on a subordinate term of the contract still being enforced." This doctrine, that repudiation prevented the repudiating party from relying on an arbitration clause in the contract, had been approved by certain American courts even before the Haldane pronouncement. *Crilly* v. *Philip Rinn Co.,* 135 Ill. App. 198, 207; *Berry* v. *Carter,* 19 Kan. 135, 139; *Willett* v. *Smith,* 214 Mass. 494, 498, 101 N.E. 1058; *Mapes* v. *Metcalf,* 10 N.D. 601, 610, 88 N.W. 713; *Calhoun, Denny & Ewing* v. *Pederson,* 85 Wash. 630, 633, 149 P. 25.

Without detailing the course of the law since 1915, we may state that the Haldane doctrine, so-called, was subsequently disapproved in England. *Heyman* v. *Darwins, Ltd.,* [1942] A.C. 356, 366. The British position now is this: "An arbitration clause is a written submission, agreed to by the parties to the contract, and, like other written submissions to arbitration, must be construed according to its language and in the light of the circumstances in which it is made. If the dispute is whether the contract which contains the clause has ever been entered into at all, that issue cannot go to arbitration under the clause, for the party who denies that he has ever entered into the contract is thereby denying that he has ever joined in the submission. Similarly, if one party to the alleged contract is contending that it is void ab initio (because, for example, the making of such a

contract is illegal), the arbitration clause cannot operate, for on this view the clause itself also is void. But, in a situation where the parties are at one in asserting that they entered into a binding contract, but a difference has arisen between them whether there has been a breach by one side or the other, or whether circumstances have arisen which have discharged one or both parties from further performance, such differences should be regarded as differences which have arisen 'in respect of,' or 'with regard to,' or 'under' the contract, and an arbitration clause which uses these, or similar, expressions should be construed accordingly." Ibid.; *Woolf* v. *Collis Removal Service,* [1948] 1 K.B. 11, 16.

The modern British view seems to us to be sound. It rests on the proposition that what is commonly called repudiation or total breach of contract, whether acquiesced in by the other party or not, does not abrogate the contract, though it may relieve the injured party from further fulfilment of his contractual obligations. "The contract is not put out of existence, though all further performance of the obligations undertaken by each party in favour of the other may cease. It survives for the purpose of measuring the claims arising out of the breach, and the arbitration clause survives for determining the mode of their settlement. The purposes of the contract have failed, but the arbitration clause is not one of the purposes of the contract." *Heyman* v. *Darwins, Ltd.,* supra, 374. The tendency of late federal decisions appears to foreshadow or to accept the modern British view. *In re Pahlberg Petition,* 131 F.2d 968, 970; *Kulukundis Shipping Co.* v. *Amtorg Trading Corporation,* 126 F.2d 978, 989; *Wilson & Co.* v. *Fremont Cake & Meal Co.,* 77 F. Sup. 364, 380. A similar trend is indicated in New

York. *Matter of Lipman (Haeuser Shellac Co.),* 289 N.Y. 76, 79, 43 N.E.2d 817; see note, 3 A.L.R.2d 383, 424 et seq. We add our approval to the British doctrine so far as it pertains to contracts providing for arbitration of disputes which involve something more than the determination of an appraisal or the setting of a value. 6 Corbin, Contracts, p. 758; see *Robinson* v. *National Fraternal League,* 81 Conn. 707, 710, 71 A. 1096; *Bernhard* v. *Rochester German Ins. Co.,* 79 Conn. 388, 395, 65 A. 134. The court was correct in holding that under the arbitration clause contained in articles 39 and 40 of Form A2 the right of the defendants to demand arbitration was not affected by the plaintiffs' claim of repudiation or total breach of the contract by the defendants.

The final claim advanced by the plaintiffs is that not only the delay of the defendants in requesting arbitration but also their failure to follow the procedure agreed upon constituted a waiver of any right to compel arbitration which they otherwise might have had. It is, of course, true that an arbitration clause may be waived by the parties or by the one entitled to its benefit. *Radiator Specialty Co.* v. *Cannon Mills, Inc.,* 97 F.2d 318, 319; *Hutchinson* v. *Liverpool & London & Globe Ins. Co.,* 153 Mass. 143, 145, 26 N.E. 439; *Independent School District* v. *A. Hedenberg & Co.,* 214 Minn. 82, 89, 7 N.W.2d 511; *Matter of Zimmerman* v. *Cohen,* 236 N.Y. 15, 19, 139 N.E. 764; 3 Am. Jur. 887, § 56; notes, 117 A.L.R. 301, 161 A.L.R. 1426. Thus, unjustifiable delay in seeking arbitration may warrant a finding of waiver. *Nagy* v. *Arcas Brass & Iron Co.,* 242 N.Y. 97, 98, 150 N.E. 614. The same result follows from the going to trial without insisting upon the arbitration condition. *Sikora* v. *Hogan,* 315 Mass. 66, 71, 51 N.E.2d 970. It is likewise true that failure to follow

the steps agreed upon as a prerequisite to the right to arbitrate may bring about waiver. *Dickens* v. *Pennsylvania Turnpike Commission,* 351 Pa. 252, 256, 40 A.2d 421.

We have no means of ascertaining from the record whether the dispute between the parties arose out of a decision made by Gitlitz or out of some other arbitrable matter. If it was the former, the defendants were required, under article 40 of Form A2, to make demand for arbitration within ten days after receipt of Gitlitz' decision; if it was the latter, the demand had to be made within a reasonable time.

The weakness of the plaintiffs' claim of waiver stems from their position before the trial court. At that time they undertook to prove, as some of their claims of law recite, that, even if the contract did provide for arbitration, the defendants had waived their right to demand it. To be sure, the subordinate facts and the court's conclusions set forth in the finding make no reference to waiver. The statement in the finding, however, that, notwithstanding all claims of law made by the plaintiffs, a stay of the legal proceedings should be had, necessarily implies that the court found no waiver on the defendants' part. If the plaintiffs wished to negate this, it was incumbent upon them to get into the finding such facts as would compel us to conclude that there had been a waiver as a matter of law. The only subordinate fact found by the court which bears on the matter is that neither party had requested arbitration prior to the institution of suit on June 26, 1953. According to the allegations of the complaint, it was on April 15, 1953, that the dispute between the parties came to a head. Since it does not appear that the dispute arose out of any decision made by Gitlitz, the ten-day limitation provided by article 40

of Form A2 would not apply. The only thing which could constitute a waiver, therefore, would be the failure of the defendants to demand arbitration within a reasonable time after an arbitrable dispute, aside from one predicated upon a decision by Gitlitz, had arisen. We cannot hold that, as a matter of law, the time between the ripening of the dispute and the demand for arbitration was unreasonable and that the defendants had consequently waived their right to insist upon arbitration.

There is no error.

In this opinion the other judges concurred.