THE GREENWICH PLUMBING AND HEATING COMPANY
*v.* A. BARBARESI AND SON, INC.

BALDWIN, C. J., KING, MURPHY, MELLITZ and SHEA, Js.

Argued June 9—decided July 26, 1960

*Daniel Baker,* for the appellant (defendant).

*Samuel H. Platcow,* for the appellee (plaintiff).

Murphy, J.   The plaintiff sued the defendant to recover for the installation of a sprinkler system in a Greenwich school.   The defendant was the general contractor.   Its contract with the Greenwich board of education did not include the sprinkler system. The plaintiff was the plumbing subcontractor.   Its subcontract with the defendant stated that the plaintiff would do the plumbing work, "including the Sprinkler System."   The plaintiff alleged that the system was included in its written subcontract upon the express oral agreement of the defendant that it would reimburse the plaintiff for the price of the system if the board of education paid the defendant for its installation as an extra which was not included in the general contract.   When the defendant collected for the system as an extra along with other items not included in the general contract and then refused to pay the plaintiff, the latter brought this suit for the price of the system, that is, $4500, and for a balance of $302.67 due under the subcontract. The plaintiff recovered a judgment which, with in-

terest, amounted to $5583.10. The defendant has appealed.

The complaint alleged a breach of the oral contract under which the defendant was to reimburse the plaintiff for the installation of the sprinkler system. During the trial, the plaintiff amended its complaint by adding a second count claiming unjust enrichment. The defendant's main contention throughout the trial and upon this appeal is that the plaintiff was bound by the terms of the subcontract, which specifically included the sprinkler system, and that it was error for the trial court to admit parol evidence to vary the terms of a written contract. The assignments of error are numerous. In addition to the errors claimed in the rulings on evidence, the defendant in effect seeks to have this court retry the case and revise the finding in accordance with the defendant's theories. If, however, the parol evidence, to which the defendant made repeated lengthy objections, was admissible, the defendant will not be entitled to any correction in the finding, since the only claimed errors which are material consist of findings which are supported by that parol evidence.

The subcontract, which was dated August 6, 1954, but was signed by the plaintiff on October 19, 1954, provided that the general contract between the board of education and the defendant, including the conditions, plans and specifications, became a part of the subcontract between the plaintiff and the defendant; that the plaintiff and the defendant agreed to be bound by all of the terms of the general contract, its conditions, the plans and the specifications, as far as applicable to the subcontract; and that the plaintiff was to furnish all the labor and material required to complete the plumbing, including the

sprinkler system, "all in accordance with the plans and specifications, and Addenda Nos. 1 to 5, inclusive." The addenda thus referred to represented additions to the instructions to contractors bidding for the job and to the plans and specifications on which the bids were to be based. They included, besides specification changes, certain so-called alternates. Addendum 4 included alternates 32, 33 and 34 as well as other alternates not material to this case. Alternate 32, after making provision for certain fireproofing, directed that if the alternate was accepted, the sprinkler system included in the original specifications would be omitted, "as noted in Alternates Nos. 33 and 34." Alternate 33 provided that the "sprinkler work including service and hose racks connected thereto" would be omitted from the base bid but that the bidder should state the amount which would be added to the base bid if the omitted work was included. Alternate 34 specified that if alternate 33 was not accepted, the bidder should state the amount to be added to the base bid for including hose racks and supply branches connecting them to the main. Alternate 32 was accepted by the board of education and became part of the general contract, whereas alternate 33 was not accepted and did not become part of the general contract.

Not only the general contract but also the plans and specifications, together with the addenda, became a part of the subcontract between the parties. *Batter Building Materials Co.* v. *Kirschner*, 142 Conn. 1, 5, 110 A.2d 464; *Geary* v. *New Haven*, 76 Conn. 84, 90, 55 A. 584. Plans and specifications show what a building contract really is. *Cruthers* v. *Donahue*, 85 Conn. 629, 631, 84 A. 322. As the subcontract itself included the sprinkler system,

whereas alternate 32, which became a part of the general contract incorporated into the subcontract, excluded it, the subcontract in its terms presented not only an ambiguity but an inconsistency which amounted to a contradiction. It was therefore competent for the court to admit parol evidence of the conversations between the parties prior to the execution of the subcontract as an aid in its interpretation and in the ascertainment of the intent of the parties as expressed in it. *Maier* v. *Arsenault,* 140 Conn. 364, 368, 100 A.2d 403; *Boucher* v. *Godfrey,* 119 Conn. 622, 628, 178 A. 655; *W. G. Maltby, Inc.* v. *Associated Realty Co.,* 114 Conn. 283, 289, 158 A. 548; *Gray* v. *Greenblatt,* 113 Conn. 535, 539, 155 A. 707. There was no error in admitting the testimony of A. P. Mazza, president of the plaintiff, concerning conversations which he had with Alfred F. Barbaresi, representing the defendant, between August 6, the date on the subcontract, and October 19, the date of its execution. These conversations tended to resolve the ambiguity in the subcontract by showing that Mazza signed it in behalf of the plaintiff in reliance on a promise by Barbaresi. That promise was that if the plaintiff installed the sprinkler system the defendant would claim it as an extra and, if it was successful in collecting from the board of education for the system as an extra, the defendant would pay the plaintiff the bid price of $4500 which the plaintiff had submitted as an addition to its base bid under alternate 33. The court did not err, furthermore, in admitting into evidence the change order of the architect allowing the defendant $11,047.13 for extras, including the sprinkler system at $4500, and other documents showing payment by the town of Greenwich to the defendant for the changes.

The court apparently construed the subcontract in the light of the parol evidence as not requiring the plaintiff to install the sprinkler system as part of the performance necessary to be rendered to earn the price stipulated in the subcontract. Consequently, the written subcontract, to the extent that it did not show how payment for the sprinkler system, if one was installed, was to be made, was not the sole repository of the final agreement between the parties, and the finding to that effect must stand. Under the circumstances, it was competent for the parties to deal with the question of payment for the sprinkler system by a contemporaneous oral agreement. *Harris* v. *Clinton,* 142 Conn. 204, 210, 112 A.2d 885. The court did not err in concluding that the oral agreement was enforceable and that under it the defendant was obligated to pay the plaintiff $4500 for the sprinkler system.

The plaintiff also recovered a balance of $302.67 due on its subcontract. Without pleading a setoff or counterclaim in accordance with General Statutes § 52-96, the defendant claimed that it was entitled to a credit of $196.49 for work which it did but which the plaintiff should have done under the subcontract. To take advantage of an offset, it must be pleaded. *Cox* v. *Cronan,* 82 Conn. 175, 177, 72 A. 927.

There is no error.

In this opinion BALDWIN, C. J., and KING, J., concurred.

SHEA, J. (dissenting). The language of the contract was clear and unequivocal. By its terms, the plaintiff was required to "[f]urnish all labor and material required to complete the 'Plumbing,' including Sprinkler System."

The principle is too well established to require citation that when parties have merged all prior negotiations and agreements in a writing, intending to make it the repository of their final understanding, evidence of those prior negotiations and agreements will not be received. *Cohn* v. *Dunn,* 111 Conn. 342, 345, 149 A. 851. The fundamental question is one of the intent of the parties. Did they intend to make the writing the repository of their final understanding on the particular matter as to which parol evidence is offered? If so, the evidence must be excluded. If, however, it appears that the parties intended to restrict the writing to specific subjects of negotiation, then agreements concerning other subjects may be proven even though those agreements differ from the writing. 9 Wigmore, Evidence (3d Ed.) § 2431. The intention of the parties is to be ascertained from their conduct and language and the surrounding circumstances. *Pyskoty* v. *Sobusiak,* 109 Conn. 593, 597, 145 A. 58. "In deciding upon this intent, the chief and most satisfactory index for the judge is found in the circumstance whether or not the *particular element of the alleged extrinsic negotiation is dealt with at all in* the writing. If it is mentioned, covered, or dealt with in the writing, then presumably the writing was meant to represent all of the transaction on that element; if it is not, then probably the writing was not intended to embody that element of the negotiation. This test is the one used by most careful judges, and is in contrast with the looser and incorrect inquiry . . . whether the alleged extrinsic negotiation contradicts the terms of the writing." 9 Wigmore, Evidence (3d Ed.) p. 98. In the present case, the subject matter was covered in the contract and the parol evidence should not have been ad-

mitted. There was no evidence upon which the court reasonably could find that the parties intended to supplement the subcontract by a contemporaneous oral agreement of the nature claimed by the plaintiff.

Early in May, 1954, the plaintiff submitted to the defendant and several other general contractors an estimate for the plumbing and heating work which was required for the erection of the school. At that time, the plaintiff had before it the plans and specifications for the work. Included among the specifications were certain addenda which provided that the board of education would have the right to elect between certain alternatives in respect to the sprinkler system. The defendant was the successful bidder, and the general contract was awarded to it in May, 1954. Later, the plaintiff and the defendant entered into negotiations concerning the execution of a subcontract for the plumbing and heating work. On October 19, 1954, nearly five months after the defendant had been awarded the general contract by the board of education, the plaintiff and the defendant entered into a subcontract under the terms of which the plaintiff agreed to furnish all the labor and material necessary for the plumbing and heating work, including the installation of a sprinkler system. The plaintiff agreed to perform all of this work for a specified sum of money. It is true, as pointed out by the majority, that the subcontract provided that the general contract between the board of education and the defendant, including the plans and specifications, should become a part of the subcontract. But it also specifically provided that these plans and specifications became a part of the subcontract only so far as they were applicable.

Under the subcontract, the plaintiff was obliged

to install a sprinkler system, and it was required to install the system in accordance with the specifications which applied to it. When a building contract is accompanied by plans and specifications which are referred to in the contract and made a part thereof, the specifications cannot, in the absence of express provision to that effect in the contract, restrict the scope of the contract or extend it to subjects other than those covered by its terms. The specifications serve the purpose of explaining and amplifying, but not of adding to, the provisions of the contract. Most important, in case of a conflict in terms, the contract itself prevails over the specifications. *Cruthers* v. *Donahue*, 85 Conn. 629, 631, 84 A. 322. In the present case, so far as the addenda to the specifications were inconsistent with the terms of the subcontract, the addenda should be disregarded. Without resort to them, the foundation for any claim of ambiguity is destroyed.

The so-called parol evidence rule is not a rule of evidence but one of substantive law. *Cohn* v. *Dunn*, 111 Conn. 342, 346, 149 A. 851. While objection may properly be made to the introduction of evidence on the ground that its admission would be in violation of the parol evidence rule, the essence of the objection is that the evidence, if admitted, would be ineffective to determine the rights of the parties, because it could not legally affect their rights as defined in the written contract and so would be immaterial. 9 Wigmore, Evidence (3d Ed.) § 2400; Thayer, Preliminary Treatise on Evidence, p. 392. If the evidence is admitted over objection or without objection, it still remains to be decided by the court whether under the circumstances of the particular case any agreement extrinsic to the writing, even if an agreement is proved, can legally

be effective to add to, subtract from or vary the terms of the writing. *Nagel* v. *Modern Investment Corporation,* 132 Conn. 698, 700, 46 A.2d 605.

Where, as here, a written contract is clear, plain and unequivocal, it is not the province of the court to alter it by construction or to make a new contract for the parties. The court is confined to the contract itself, without regard to its wisdom or folly. *Lakitsch* v. *Brand,* 99 Conn. 388, 393, 121 A. 865. The contract made by the parties here was the repository of their final understanding. The parol evidence should not have been admitted. Even though it was admitted improperly, it should not now be considered to affect, alter or vary the terms of the contract. *Nagel* v. *Modern Investment Corporation,* supra.

In this opinion MELLITZ, J., concurred.