AUGUSTUS A. MAIER ET AL. *v*. EUGENE G. ARSENAULT

BALDWIN, INGLIS, O'SULLIVAN, QUINLAN and WYNNE, Js.

Argued October 6—decided October 27, 1953

*Anthony J. Gryk,* with whom was *Wesley C. Gryk,* for the appellant (defendant).

*John D. LaBelle,* with whom, on the brief, were *Jay E. Rubinow* and *Eugene T. Kelly,* for the appellees (plaintiffs).

INGLIS, C.J. On July 23, 1951, the defendant agreed by a bond for a deed that, on or before September 15, 1951, and upon the payment of the agreed purchase price, he would convey by warranty deed to the plaintiffs the real property owned by him on Greenwood Drive in Manchester. At the time the agree-

ment was executed there was a dwelling house in process of construction on the land in question. The agreement contained this provision: "The said Arsenault agrees to have said premises ready for occupancy on or before date of delivery of deed, with a Certificate of Occupancy issued by the Town of Manchester." The trial court concluded, with the aid of parol evidence, that by the words quoted the parties expressed the intent that the construction of the dwelling house should be completed in accordance with accepted building practices and in good workmanlike manner. The principal question on this appeal is whether that conclusion was correct.

The defendant has made one of those wholesale attacks on the finding which we have so often deprecated. Except in the one particular hereinafter noted, this attack is without merit. In addition to the facts already stated, the following material findings were made: At the time the parties entered into the written agreement the cement floor had not been laid in the cellar, the plumbing and heating had been only roughed in, the outside grading was incomplete, a trench for the water supply remained to be dug and the water supply connected by breaking through the foundation, and several other things remained to be done. Prior to that time the parties had had conferences concerning what work remained to be done to the house in order to have it "ready for occupancy," and it was the understanding that the dwelling house would be completed in a workmanlike manner in accordance with accepted building practices. In particular, it was orally agreed that the cellar floor would be so laid that the cellar would be dry.

The house was not completed by September 15 and it was not until October 22 that the deed was executed and delivered. Prior to that time the defendant had

laid the cellar floor, but in such an unworkmanlike manner that water seeped through it and also ran through a hole that had been broken in it. When the deed was delivered the defendant orally promised to correct that condition. Later he did fill in the hole, but this did not prevent the seepage, and the condition has never been corrected. After the heating system was installed it developed that some of the heating conductors did not heat. The defendant refused to correct the defective heating installation, and this work had to be done by the plaintiffs. The defendant also refused to install certain bathroom fixtures, and these were later furnished by the plaintiffs. The reasonable cost to the plaintiffs of correcting all of these defects was $393.71.

On October 22, at the closing, the plaintiffs and the defendant executed an adjustment sheet which contained this statement: "The Buyer releases the Seller from any claims by reason of delay in completion of building, and the Seller releases Buyer from any and all extra services or materials furnished said building." We add to the finding the fact that prior to October 22 the building inspector of the town of Manchester issued a certificate of occupancy for the house in question.

In addition to the conclusion already stated concerning the proper interpretation of the contract, the trial court concluded that the defendant had breached the agreement in various particulars stated above and rendered judgment for the plaintiffs to recover $393.71.

The chief contention of the defendant is that, in its determination of what his obligations were under the bond for a deed, the trial court erred by taking into consideration the conversation of the parties prior to the execution of the contract. It is, of course,

fundamental, as a matter of substantive law, that the terms of a written contract which is intended by the parties to set forth their entire agreement may not be varied by parol evidence. *Trumbull Electric Mfg. Co.* v. *John Cooke Co.,* 130 Conn. 12, 16, 31 A.2d 393; *Nagel* v. *Modern Investment Corporation,* 132 Conn. 698, 700, 46 A.2d 605. It is equally fundamental, however, that when the words used in a written contract are uncertain or ambiguous, parol evidence of conversations between the parties or other circumstances antedating the contract may be used as an aid in the interpretation of the contract, that is, in the determination of what was the intent of the parties which was expressed by the written words. *Maltby, Inc.* v. *Associated Realty Co.* 114 Conn. 283, 289, 158 A. 548; *Gray* v. *Greenblatt,* 113 Conn. 535, 539, 155 A. 707; *Mazzotta* v. *Bornstein,* 104 Conn. 430, 439, 133 A. 677; *In re Curtis-Castle Arbitration,* 64 Conn. 501, 514, 30 A. 769.

The phrase "ready for occupancy" used in the bond for a deed now before us does not have any clear and definite meaning. As we said in *Murphy* v. *Schwaner,* 84 Conn. 420, 427, 80 A. 295, with reference to exactly the same phrase used in a lease, "The law does not define the precise condition in which premises must be, in order to render them 'ready for occupancy.'" Since the phrase is thus indefinite in its meaning, it follows that it was proper for the trial court in the present case to look to parol evidence of conversations had by the parties and of what they understood the use of the words to involve in order to ascertain what intent was expressed by the phrase. With evidence of those conversations and that understanding before it, the court could hardly have come to any conclusion other than the one it reached, namely, that the intent expressed by the written contract

was that the defendant was bound to deliver to the plaintiffs possession of a dwelling house completed in a workmanlike fashion.

The defendant also points to the fact that in the bond for a deed the phrase we have just been considering is followed by the words "with a Certificate of Occupancy issued by the Town of Manchester." He contends that the two should be read together, with the result that the contract should be held to mean that his procurement of a certificate of occupancy would satisfy the requirement that the premises must be "ready for occupancy." Aside from the rather technical consideration that a comma separates the two provisions in the bond for a deed, the common-sense interpretation of the entire sentence is that a double obligation was thereby imposed on the defendant. The contract contemplated that the defendant must both complete the dwelling so that it would be ready for occupancy and procure a certificate of occupancy so that the plaintiffs could legally move in.

The further claim of the defendant that the plaintiffs by reason of the provision written in the adjustment sheet waived the completion of the house is without merit. The provision is that the plaintiffs released the defendant from any claims by reason of the "delay" in the completion of the building. They did not waive any claim by reason of his failure to complete it.

In his brief, the defendant makes the point that ordinarily delivery and acceptance of a deed in full performance of the provisions contained in the bond for a deed operate to extinguish all of those provisions and all previous oral agreements. He contends that in the present case the plaintiffs, by accepting the deed, waived the defendant's prior agreement to

complete the dwelling. It does not appear that this claim of law was made in the trial court. It therefore calls for no comment here. Practice Book § 154.

There is no error.

In this opinion the other judges concurred.