## FAIRFIELD LEASE CORPORATION *v.* EASTERN SPORTSWEAR COMPANY, INC.

### APPELLATE DIVISION OF THE CIRCUIT COURT

FILE No. CV-14-679-31337

Argued April 6—decided May 22, 1970

*Samuel M. Chambliss,* of Bridgeport, for the appellant (plaintiff).

*Harry Cooper,* of Hartford, for the appellee (defendant).

KINMONTH, J. This action was brought to recover the balance due on an instalment contract for one hot-drink machine. From the judgment for the defendant the plaintiff has appealed, assigning error in the court's finding and conclusions and in the admission of certain evidence. The assignments pursued in the brief involve claims under the parol evidence rule, and these we consider. Other assignments not briefed we consider abandoned. *Shelton Yacht & Cabana Club, Inc.* v. *Suto,* 150 Conn. 251, 256.

The material portions of the finding may be summarized as follows: In 1965, and for some time prior thereto, U-Vend, Inc., was engaged in the business of leasing coin-operated coffee machines to business and industrial concerns. At that time, the defendant was engaged in the dressmaking business, employing seventy-five to eighty women. On and before August 12, 1965, U-Vend, Inc., and the defendant had discussions on the leasing of a coin-operated coffee machine, and U-Vend, Inc., became familiar with the nature of the defendant's business and the number of women it employed. During these discussions the defendant made it known to U-Vend, Inc., that it would be interested in leasing a coffee machine provided it was understood that the defendant could terminate the lease arrangement if it discontinued the dressmaking business. Thereafter, to induce the defendant to enter into a lease agreement, U-Vend, Inc., wrote the defendant a letter, dated August 12, 1965.[1] On August 16, 1965, U-Vend, Inc., and the defendant executed a document entitled "Lease Agreement." The parties agreed that the letter and

---

[1] The letter reads: "This is to confirm the fact that should the principals involved in the above company [Eastern Sportswear Company, Inc.] discontinue business operation and should the business itself no longer be operated by anyone then from the time when the machine is returned, the undersigned will end the term of the lease and discharge all payments due from that time, provided the Lessee

lease agreement were one contract. The lease agreement was for a term of thirty-six months beginning August 20, 1965, for a monthly rental of $39.50 per month. On August 20, 1965, U-Vend, Inc., assigned and sold the lease to the plaintiff. On July 11, 1966, the defendant leased its dressmaking machines and equipment to Eastern Sportswear, Ltd. On July 15, 1966, the defendant caused a letter to be sent to U-Vend, Inc., with a copy forwarded to the plaintiff, advising that it, the defendant, had disposed of its dressmaking business, and that it was terminating the lease in accordance with the terms thereof; and it requested advice where the coffee machine should be delivered. By letter dated July 19, 1966, U-Vend, Inc., acknowledged receipt of the letter and it specified that the machine be returned to "our warehouse since we store the machines belonging to Fairfield Lease Corporation." In July, 1966, the defendant returned the machine to U-Vend, Inc., and it was accepted by them and the plaintiff. The defendant had paid all rental due to the plaintiff up to the date of the return of the machine. The defendant and Eastern Sportswear, Ltd., are separate entities, having no connection with one another, other than the leasing of equipment. After leasing the equipment to Eastern Sportswear, Ltd., neither the defendant nor its officers or principals engaged in the dressmaking business, directly or indirectly. Since leasing its equipment, the defendant has become engaged in the business of buying mortgages and investing in stocks and bonds and has only one employee.

---

is not in default in any of the provisions of any lease the Lessee has signed with us.

"In addition, should Eastern Sportswear Company, Inc. merge or sell their business to another firm then the term of our lease will be ended when the machine is returned and providing the Lessee is not in default in any of the provisions of any lease the Lessee has signed with us."

From these facts, the court concluded that the letter of August 12, 1965, and the lease agreement made up the whole agreement between the parties; that, from all the circumstances, in using the word "business" in the letter the parties intended and meant to embrace the dress business then being operated by the defendant; that the lease agreement was effectively terminated; and that the plaintiff was not entitled to recover.

The chief contention of the plaintiff is that the trial court erred by taking into consideration the conversation and circumstances of the parties prior to the execution of the contract, and thus violated the parol evidence rule. The court, over the plaintiff's objection, allowed the defendant to testify as to the discussions between it and U-Vend, Inc., which led up to the letter of August 12, 1965. The defendant testified that it did not want to sign the lease agreement unless a provision was made that if it went out of the dressmaking business the contract could be terminated. As a result U-Vend, Inc., wrote the letter. The plaintiff maintains that the use of the word "business" in the contract was used in its ordinary sense, that the court erred in limiting it to the dressmaking business, and that the contract spoke for itself and oral evidence was not admissible to change the meaning of the written contract.

It is true that if the written contract contains all the terms, they cannot be added to, subtracted from or varied by parol evidence. We feel that is not the situation in the present case. It is not the question of a separate understanding but rather the meaning of the contract itself. The meaning of the terms of a contract as shown by the conduct of the parties regarding them is a proper consideration in the interpretation of the contract. *Taft Realty Corporation* v. *Yorkhaven Enterprises, Inc.,* 146 Conn. 338,

343. In many instances parol testimony is received in connection with a written contract, but this is done always to enable the court to understand the meaning of the words the parties have used, never to change, vary or contradict them. In other words, parol evidence may be received to enable the court to identify the person or thing to which the instrument refers. *Hildreth* v. *Hartford, M. & R. Tramway Co.,* 73 Conn. 631, 636. Such evidence may properly be received to show the meaning of the word or words, as understood by the parties at the time the contract was entered into, and the meaning which may properly be given to them when used in connection with the particular circumstances. *Murphy* v. *Schwaner,* 84 Conn. 420, 426. The testimony was offered and received by the court for the purpose of showing the meaning of the term as used in the contract and was admissible for that purpose. This understanding of the parties was properly considered by the trial court, not for the purpose of ascertaining any unexpressed intent, but to determine the intent they meant to express by the words they used. *Maltby, Inc.* v. *Associated Realty Co.,* 114 Conn. 283, 289; *Gray* v. *Greenblatt,* 113 Conn. 535, 539; *Mirando* v. *Mirando,* 104 Conn. 318, 322; *In re Curtis-Castle Arbitration,* 64 Conn. 501, 515. The evidence was properly admitted for the purpose it was offered.

The plaintiff is entitled to no changes in the court's finding, and the conclusions of the court are legally drawn from the facts as found.

There is no error.

In this opinion DEARINGTON and DICENZO, Js., concurred.