WARNACO, INC., Plaintiff,

v.

Harold FARKAS, Wake Warthen and Morton S. Robson, Defendants.

No. 85 Civ. 2917 (RLC).

United States District Court, S.D. New York.

April 13, 1987.

Kramer, Coleman & Rhine, New York City, for plaintiff; Howard I. Rhine, R. Jeffrey Moore, of counsel.

Cooper Cohen Singer Ecker & Shainswit, New York City, for defendant Morton S. Robson; Morton S. Robson, Kenneth N. Miller, of counsel.

Berger & Steingut, New York City, for defendant Harold Farkas.

## OPINION

ROBERT L. CARTER, District Judge.

Plaintiff Warnaco, Inc. ("Warnaco"), a Connecticut corporation, brought this diversity action for payment on a guarantee. Named as guarantor-defendants are three individuals, Harold Farkas, Morton S. Robson, and Wake Warthen, all citizens of the State of New York.

Warnaco has moved for summary judgment on the guarantee. In addition, Farkas has cross-moved for summary judgment against co-defendant Robson, seeking indemnification for Farkas's liability, if any, on the guarantee.

## BACKGROUND

This action arose in the aftermath of changes in the ownership of Jerry Silverman, Inc., a manufacturer of designer dresses, and its affiliate, Jerry Silverman Sport Inc. (collectively "JSI"). The pertinent facts converge around two major transactions.

### 1. *The Warnaco-Farowa Sale*

On June 1, 1981, Warnaco sold all of the stock in JSI to Farowa, Inc. ("Farowa"), a corporation wholly owned by defendants and formed for the purpose of acquiring JSI. Farkas owned 50 percent of the Farowa stock, while Robson and Warthen each held 25 percent. In return for the equity in JSI, Farowa tendered $750,000 in cash and executed a promissory note ("the Note") pledging an additional $750,000. The Note provided for yearly payments of $50,000 due on June 1 of the years 1982 through 1987, a final principal payment of $450,000 due on June 1, 1988, and quarterly interest payments during the term of the Note. It also provided for acceleration of the unpaid principal and interest upon default by Farowa, as well as an increased rate of interest after default.

Annexed to the Note is the guarantee ("the Guarantee") on which Warnaco bases its claim. By the terms of the Guarantee,

Farkas, Warthen, and Robson jointly and severally pledge "due and punctual" payment of the Note, without condition, except for a limitation on liability of 20 percent of the amount owing on the Note.[1]

The agreement providing for the transfer of the JSI stock also incorporated a licensing agreement ("the License"). This latter agreement authorized Farowa's use of a number of JSI trademarks. It also provided, however, for termination of the License, at Warnaco's option, upon Farowa's default on the Note.

Farowa defaulted in 1983. Upon the default, Warnaco opted to terminate the License. Although Farowa has since made four interest payments of $10,000 each, it remains in default on the balance of the outstanding principal and interest.

### 2. *The Farkas-Robson Sale*

When Farowa took ownership of JSI, Farkas assumed full responsibility for JSI's day-to-day operations and management. Robson and Warthen provided only occasional consulting and assistance in financing.

JSI's financial condition soon worsened. Within a few months of Farowa's initial default on its obligation to Warnaco, Robson solicited the services of Princess Katalin zu Windisch-Graetz, a talented designer of evening gowns. Katalin was to take over for Farkas as president of JSI, overseeing design, production, marketing, and sales, while Farkas would remain in charge of financial matters. Farkas first assented to this arrangement. Later, however, he changed his mind and refused to allow Katalin to take his place unless Robson would agree to buy out his share of JSI.

With a deadline for garment designs imminent, Farkas and Robson reached a second, conclusive agreement. Farkas gave up control of JSI, selling all of his Farowa stock to Robson for $20,000, and Robson indemnified Farkas against, *inter alia,* liability on the Guarantee.[2]

Once in control of JSI, Robson invested an additional $100,000 in the company. Nevertheless, JSI's liabilities proved too large to overcome and within about five months of the Farkas-Robson agreement, JSI's operations came to a close.

### DISCUSSION

### A. *The Guarantee*

Warnaco's motion for summary judgment may be granted if no material fact is genuinely at issue and Warnaco is entitled to judgment as a matter of law. Rule 56(c), F.R.Civ.P.; *Knight v. U.S. Fire Insurance Co.,* 804 F.2d 9, 11 (2d Cir.1986). Ambiguities must be resolved, and reasonable inferences drawn, against the moving party in determining whether there are factual issues which must be tried. *Id.* However, if the only facts at issue are not material to the claims before the court, they will not defeat the motion for summary judgment. *Id.* at 11–12.

1. The Guarantee reads in full:
   For Value Received, Harold Farkas, Wake Warthen, and Morton Robson hereby, jointly and severally, unconditionally guarantee to the holder of this Note the due and punctual payment of the principal of and interest on this Note as hereinafter limited, when the same shall become or be due, by acceleration or otherwise, hereby expressly waiving presentment, protest, demand for payment and notice of default. The liability of the undersigned Guarantors is limited to twenty percent (20%) of the amount due under this Note. After making payment in full under the aforesaid Guarantee, the Guarantors shall have no obligation to pay any interest or costs of collection incurred by the holder with respect to the unpaid balance of this Note. The making by the Guarantors of partial payment under the aforesaid Guarantee shall relieve them on a pro rata basis of the obligation to pay interest or costs of collection.
   Complaint, Exh. A at 4–5.

2. The indemnification provision reads:
   Buyer hereby indemnifies Seller against, and agrees to pay, any liability Seller may have on guarantees, if any, of the obligations of [Farowa], Silverman, or J.S. Sport, Inc., to Sterling Bank; Warnaco, Inc.; and Toyoshima, Inc., or any liabilities arising under the Multi-Employer Pension Act by virtue of this sale.
   Defendant Farkas's Notice of Cross-Motion, Exh. T at 2.

Robson and Warthen make two arguments in opposition to Warnaco's motion for summary judgment.[3] They argue first that when Warnaco terminated the License it effectively retained the JSI trademarks as collateral in satisfaction of defendants' obligations on the Guarantee. In addition, they contend that even if defendants' obligations remain unsatisfied, their liability should be limited in accordance with the understanding of the parties at the time the Guarantee was executed. Neither argument raises any issue of material fact.

Addressing the latter argument first, any supposed understanding between the parties which they failed to include in the clear language of the Note and Guarantee is for present purposes irrelevant. In particular, Robson and Warthen would have the court construe the limiting terms "twenty percent (20%) of the amount due under this Note" to mean that the guarantors are liable only up to $150,000.[4] They also argue that all monies paid on the Note by Farowa reduce *pro tanto* their current obligation on the Guarantee. They urge that negotiations leading up to the Warnaco-Farowa agreement reveal that this is what the limitation on liability was understood to mean.

■ Under Connecticut law,[5] however, the court may not second-guess the clear language of a contract. Contemporaneous oral agreements or understandings are inadmissible to contradict the terms of the Guarantee because its language is unequivocal. *See* Conn.Gen.Stat. § 42a–2–202;[6]

accord *Maier v. Arsenault*, 140 Conn. 364, 100 A.2d 403, 404 (1953).

■ Were there any doubt that the Guarantee means what it says, the court would look to such extrinsic evidence as might explain the parties' intent. *Panaroni v. Johnson*, 158 Conn. 92, 256 A.2d 246, 255 (1969) (where contract is ambiguous, court may consider evidence of parties' prior or conversations to aid its interpretation). Here, however, the alternative interpretation suggested by Robson and Warthen is far-fetched to say the least. Had the guarantors wanted to limit their liability to $150,000, they could have said so directly. Instead, they chose equally direct but very different terms. The clear import of the terms they did choose is controlling. *See Fairfield Lease Corp. v. Eastern Sportswear Co.*, 6 Conn.Cir.Ct. 347, 273 A.2d 300, 302 (1970) (parol testimony is inadmissible to change, vary, or contradict the terms the parties have used). Thus, although Robson and Warthen have raised a factual issue as to oral agreements reached prior to or at the same time as the signing of the Note and Guarantee, that issue is immaterial to Warnaco's claim and ineffective to overcome the motion for summary judgment. *See Knight, supra*, 804 F.2d at 11–12.

Robson and Warthen also argue that Warnaco's termination of Farowa's rights under the License constituted retention of collateral in satisfaction of the guarantors' obligations, as authorized by Conn.Gen. Stat. § 42a–9–505(2).[7] The parties confine

---

3. Farkas apparently does not join in his co-defendants' opposition to Warnaco's motion, but instead cross-moves against Robson.

4. $150,000 is 20 percent of $750,000, the principal amount of the note.

5. The parties agree that Connecticut law governs the court's interpretation of the Guarantee. The Note, to which the Guarantee is appended, provides: "This Note shall be construed in accordance with the laws of the State of Connecticut." Complaint, Exh. A at 3.

The threshold question whether to honor the parties' choice of Connecticut law is governed by the law of New York, the state in which this court sits. *See Klaxon v. Stentor Electric Manufacturing Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941). Under New York law, their decision that Connecticut law should

control their contract is fully enforceable. *See Levey v. Saphier*, 83 Misc.2d 146, 370 N.Y.S.2d 808, 813 (Sup.Ct. Nassau County 1975); *Bank Itec N.V. v. J. Henry Schroder Bank & Trust Co.*, 612 F.Supp. 134, 140–41 (S.D.N.Y.1985) (Goettel, J.).

6. The section provides in part:

Terms ... set forth in a writing intended by the parties as a final expression of their agreement with respect to such terms as are included therein may not be contradicted by evidence of any prior agreement or of a contemporaneous oral agreement....
Conn.Gen.Stat. § 42a–2–202.

7. The section provides in relevant part:

In any other case involving ... collateral a secured party in possession may, after default,

their argument to the legal consequences of Warnaco's termination of the License without disputing any of the surrounding facts.

■ It is unclear that Farowa's right to use JSI trademarks was "collateral" as the term is used in section 42a–9–505(2). More plausibly, it was simply a contractual right subject to a condition subsequent. *See, e.g., Robinson v. Weitz,* 171 Conn. 545, 370 A.2d 1066, 1069 (1976); *Dolak v. Sullivan,* 145 Conn. 497, 144 A.2d 312, 315–16 (1958). Nonetheless, assuming as the parties do for purposes of this motion that the licensed use of the trademarks was collateral, Warnaco's termination of that use does not impair its right of recovery on the Guarantee.

More is required to retain collateral in satisfaction of a debt under section 42a–9–505(2). The statute provides that a debt is discharged only after the secured party has proposed *in writing* to retain the collateral in satisfaction of the obligation and no interested party objects in writing within 30 days. *Id.* These explicit, formal requirements preclude the court from finding that the conduct of the parties impliedly provided notice. *Accord Szelega v. Farega Realty Corp.,* 97 A.D.2d 874, 469 N.Y.S.2d 271, 273 (3d Dep't 1983) (construing the substantially identical N.Y.U.C.C. § 9–505(2)); *S.M. Flickinger Co. v. 18 Genesee Corp.,* 71 A.D.2d 382, 423 N.Y.S.2d 73, 76 (4th Dep't 1979) (same). *See generally Caulkins v. Petrillo,* 200 Conn. 713, 716–20, 513 A.2d 43, 45–47 (1986) ("courts should not imply exceptions to a statute which the legislature did not prescribe by word or implication."). Absent proof of written notice that Warnaco intended to release Farowa from liability, discharge of the debtor's obligation may not be inferred. Defendants do not allege that they received such notice. The court finds, therefore, that the obligations of Farowa and defendants have not been discharged.

■ The remaining question is whether Warnaco may proceed to collect on the Guarantee without first disposing of the putative collateral. The answer is dictated by section 42a–9–501(1).[8]

The statute, which provides generally for a secured party's remedies upon default, expressly makes those remedies "cumulative." *Id.* The cumulative nature of Uniform Commercial Code remedies is in derogation of the old rule that election of one remedy precludes pursuit of another. *Accord Williams v. Westinghouse Credit Corp.,* 250 Ark. 1065, 468 S.W.2d 761, 764 (1971); *Ceres Fertilizer, Inc. v. Beekman,* 209 Neb. 447, 308 N.W.2d 347, 349 (1981). *See generally Skorpios Properties, Ltd. v. Waage,* 172 Conn. 152, 374 A.2d 165, 168 (1976) (statutory remedy should be construed as cumulative rather than exclusive absent express or implied legislative intent to the contrary). Thus, to the extent that Farowa's obligation on the Note remains unsatisfied, Warnaco may pursue cumulative recovery of both the obligation on the

propose to retain the collateral in satisfaction of the obligation. Written notice of such proposal shall be sent to the debtor if has has not signed after default a statement renouncing or modifying his rights under this subsection.
. . .
[N]otice shall be sent to any other secured party from whom the secured party has received, before sending his notice to the debtor or before the debtor's renunciation of his rights, written notice of a claim of an interest in the collateral. If the secured party receives objection in writing from a person entitled to receive notification within twenty-one days after the notice was sent, the secured party must dispose of the collateral under section 42a–9–504 ["Secured party's right to dispose of collateral after default; effect of disposition"]. In the absence of such written objection the secured party may retain the collateral in satisfaction of the debtor's obligation. Conn.Gen.Stat. § 42a–9–505(2).

8. The subsection provides in pertinent part:
When a debtor is in default under a security agreement, a secured party has the rights and remedies provided in this part. . . . He may reduce his claim to judgment, foreclose or otherwise enforce the security interest by any available judicial procedure. . . . A secured party in possession has the rights, remedies and duties provided in section 42a–9–207 ["Rights and duties when collateral is in secured party's possession"]. *The rights and remedies referred to in this subsection are cumulative.*
Conn.Gen.Stat. § 42a–9–501(1) (emphasis added).

Guarantee and the value of the "collateral." *Accord First International Bank of Israel, Ltd. v. L. Blankstein & Son, Inc.*, 59 N.Y.2d 436, 447, 465 N.Y.S.2d 888, 893, 452 N.E.2d 1216, 1221 (1983) (bank was entitled to proceed against promissory notes without first selling collateral under substantially identical N.Y.U.C.C. § 9-501(1)); *State Bank of Albany v. Duesler*, 41 A.D.2d 1009, 344 N.Y.S.2d 114, 115 (3d Dep't 1973) (as a matter of law, plaintiff had right to collect on note without resorting to any security); *cf. Hartford National Bank & Trust Co. v. Kotkin*, 185 Conn. 579, 441 A.2d 593, 594 (1981) (plaintiff may bring suit on notes without foreclosing on real property securing the notes).

The Guarantee jointly and severally pledges on behalf of each defendant 20 percent of the amount due under the Note. No material facts are at issue, and Warnaco is entitled as a matter of law to recover on the Guarantee. Plaintiff's motion for summary judgment is granted.

### B. *The Indemnity Agreement*

When Farkas cross-claimed against Robson, seeking indemnity for liability on the Guarantee, Robson interposed the affirmative defenses of fraud in the inducement and duress. By way of his cross-motion for summary judgment, Farkas now argues that Robson's defenses are frivolous. Farkas seeks judgment as to his indemnity and also moves for sanctions under Rule 11, F.R.Civ.P.

■ One detail should be noted which, though subject to controversy between the parties, does *not* bear on the propriety of summary judgment. Robson argues that the fact that Farkas did not support the cross-motion with affidavits is in itself a sufficient reason to deny summary judgment. However, the United States Supreme Court's decision in *Celotex Corp. v. Catrett*, — U.S. —, 106 S.Ct. 2548 (1986), 91 L.Ed.2d 265, makes short shrift of that argument. Where, as in this case, the nonmoving party bears the burden of proof on a dispositive issue (such as whether he has a valid defense to a claim), the moving party may rely solely on the "pleadings, depositions, answers to interrogatories, and admissions on file." *Id.* at —, 106 S.Ct. at 2553 (quoting Rule 56(c), F.R.Civ.P.). The motion may but need not be accompanied by affidavits. *Id.*

The more substantive question presented is whether by citing certain portions of the depositions and other materials Farkas has successfully demonstrated the absence of any genuine issue of material fact. *See id.* According to Farkas, Robson's defense of fraud in the inducement is meritless because Robson did not trust or rely on Farkas's representations about JSI's financial condition, and because Robson's accountant furnished him with cash flow projections for JSI on which Robson could have relied. In addition, Farkas challenges Robson's defense of duress on the ground that Robson decided to buy out Farkas's stock only "after a careful risk/reward analysis" and after bargaining Farkas down to a lower price. Defendant Farkas's Memorandum at 15.

Robson contests each of these allegations. He avers that although he had no faith in Farkas's opinion of future cash needs, he did rely on Farkas's factual representations about the current amount and status of the company's accounts payable. He also states that he was under duress when he purchased Farkas's stock because when the latter reneged at the last minute on the agreement to allow Katalin to take control, the only alternative to buying out Farkas was to give up any chance to salvage his investment and to avoid a substantial liability.

■ Under New York law,[9] Robson's state of mind—what he knew and believed when he agreed to the stock transfer and indemnity agreement—presents an issue of material fact for purposes of both of his defenses. *See 805 Third Avenue Co. v.*

---

9. The agreement between Farkas and Robson provides that it "shall be construed and enforced in accordance with the laws of [the State of New York]." Defendant Farkas's Notice of Cross-Motion, Exh. T at 2. This clause, like the choice-of-law provision in the Warnaco-Farowa agreement, is enforceable. *See* note 5 *supra.*

*M.W. Realty Associates,* 58 N.Y.2d 447, 451, 461 N.Y.S.2d 778, 780, 448 N.E.2d 445, 447 (1983) (duress requires a showing that, *inter alia,* defendant was precluded from exercising free will); *Demov, Morris, Levin & Shein v. Glantz,* 53 N.Y.2d 553, 444 N.Y.S.2d 55, 57, 428 N.E.2d 387, 389 (1981) (defense of fraudulent inducement to enter a contract requires reliance). The parties are unable to agree on Robson's state of mind, and the court is not free to choose from among their conflicting allegations. *See Knight, supra,* 804 F.2d at 11. As Robson correctly points out, the discovery materials from which Farkas seeks support could at best be used to impeach Robson's testimony as to what he believed. One might, for example, introduce deposition statements demonstrating Robson's hard-bargaining style and lack of faith in Farkas to cast doubt on the factual basis for the alleged defenses.

█ At the summary judgment stage, however, an attempt by the court to resolve these material issues of credibility would be improper. *Id.* Farkas's cross-motion for summary judgment must therefore be denied. Moreover, because Robson's defenses properly may be tested only at trial, there is no basis for concluding at this stage that by asserting them he violated Rule 11, F.R.Civ.P. The cross-motion for sanctions thus is likewise denied.

IT IS SO ORDERED.