[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff, JP Foodservice, Inc., a Delaware corporation engaged in the business of supplying food and related products to restaurants and other commercial customers in Connecticut, brought this action against the defendant, Anthony A. Gomes, a former sales representative for the plaintiff, seeking injunctive relief and damages for breach of a covenant not to compete.
Based on a preponderance of the evidence admitted at trial, the court finds initially that on or about April 2, 1990, the plaintiff hired the defendant as a sales representative to solicit, service and sell products to customers of the plaintiff and to solicit new business on behalf of the plaintiff in central and northwest Connecticut. Prior to and at the time the defendant was offered the employment, the defendant was informed that his employment was conditioned on his execution of a sales representative's agreement. The defendant did execute an agreement and received an additional payment of one hundred dollars for doing so. The agreement could not be located by either party and neither the original nor a copy of the specific agreement was presented in evidence. By the terms of paragraph two of the agreement signed by the defendant, he agreed that he would not disclose or use confidential or proprietary information belonging to the plaintiff without prior written permission during his employment. The defendant agreed in paragraph three of his agreement to return originals and copies of all documents and company information to the plaintiff upon termination of employment. Finally, paragraph four of the sales representative's agreement provided that the defendant would not directly or indirectly:
 contract, solicit, or sell to any of the customers or prospective customers of the Company which I had CT Page 11772 contact with while employed by the Company, with respect to any product or service which is competitive with any product or service sold by the company or planned to be sold by the Company during my employment with the Company or during a one (1) year period following my termination.
On or about March 13, 1992, the defendant resigned his employment with the plaintiff and, on or about March 16, 1992, became employed as a sales representative by Schaffer Food Service, a competitor of the plaintiff. In conjunction with the termination of employment, the parties executed a termination agreement dated March 13, 1992. After terminating his employment, the defendant solicited customers and prospective customers of the plaintiff and used proprietary information of the plaintiff in the course of his employment by Schaffer.
The plaintiff alleges that it suffered and will continue to suffer irreparable damage as a result of the defendant's breach of the sales representative's agreement, the loss of its customers and prospective customers, damage to its good will, and other damage for which there is no adequate remedy at law.
In this action the plaintiff seeks to enjoin and restrain the defendant until March 13, 1993 from contacting, soliciting and selling to customers and prospective customers of the plaintiff with whom the defendant had contact while employed by the plaintiff, with respect to any product or service which is competitive with any product or service sold by the plaintiff or planned to be sold by the plaintiff during the defendant's employment with the plaintiff or during the one year period after his termination. The plaintiff also seeks to permanently enjoin or restrain the defendant from disclosing or using the plaintiff's confidential and proprietary information. In addition, the plaintiff seeks an order requiring the defendant to return to the plaintiff any and all records, files, and other documents and any photographic or other tangible materials, and any and all copies thereof, of the plaintiff, its business, and customers.
In his answer, by way of special defense, the defendant asserted that the termination agreement dated March 13, 1992 is the complete present agreement between the parties and, therefore, the defendant is not bound by any covenant not to compete. In his second special defense, the defendant alleged CT Page 11773 that any sales representative's agreement purportedly signed by him was signed under duress and is invalid. In a third special defense, the defendant alleged that any sales representative's agreement purportedly executed was executed without valid or sufficient consideration and is invalid. In the fourth special defense, the defendant alleged that the agreement purportedly signed is unreasonable, unconscionable, and against public policy and, therefore, is invalid.
Five issues were presented in this case:
1. Whether the parties entered into a covenant not to compete.
2. If a covenant not to compete existed, whether it survives the written agreement dated March 13, 1992 providing for termination of defendant's employment.
3. Whether the covenant not to compete was breached.
4. Whether the covenant is unreasonable, unconscionable or against public policy.
5. Whether the plaintiff will be irreparably harmed if an injunction is not granted.
The court's decision on the first two issues are dispositive of the case.
 I.
THE EXISTENCE OF A COVENANT NOT TO COMPETE
"The cases and commentaries are . . . in substantial agreement that a party must undertake a twofold burden in order to recover on a document that he cannot produce. Such a party must demonstrate both (a) former existence and the present unavailability of the missing document, and (b) the contents of the missing document." Connecticut Bank Trust Co. v. Wilcox,201 Conn. 570, 573, 518 A.2d 928 (1986), citing Woicicky v. Anderson, 95 Conn. 534, 536, 111 A. 896 (1920); Kelsey v. Hanmer,18 Conn. 311, 317 (1847); C. McCormick, Evidence 53, pp. 138-39 (3d Ed. 1984). In a bench trial, there is no specific sequence in which the party relying on a lost document must present evidence to satisfy his twofold burden. Connecticut Bank Trust CT Page 11774 Co. v. Wilcox, supra, 574, citing Fitch v. Bogue, 19 Conn. 285,290-91 (1848). Also, "there is no automatic enhancement of that burden of proof merely because, under the applicable provisions of the statute of frauds; General Statutes 52-550; the contract in question was required to be memorialized in a written memorandum." (Footnote omitted.) Connecticut Bank Trust Co. v. Wilcox, supra. "The loss or destruction of a memorandum does not deprive it of effect under the Statute [of Frauds]." Restatement (Second) of Contracts 137 (1981).
"In any dispute concerning the existence, loss or terms of a missing document, it is appropriate for the parties to bring to the court's attention whatever evidence, direct or circumstantial, written or oral, the trial court may find relevant and persuasive." Connecticut Bank Trust co. v. Wilcox, supra, 575. Whether the plaintiff sufficiently demonstrated the former existence and present unavailability of the agreement and its contents is a question of fact for the trial court. Central National Bank of New York v. Bernstein,15 Conn. App. 90, 92, 544 A.2d 239 (1988), citing Connecticut Bank 
Trust Co. v. Wilcox, supra, 574-75. In this case, the plaintiff has satisfied its twofold burden.
First, the plaintiff presented adequate evidence to meet its burden of proving the previous existence of the missing document. on this issue, the court further finds that Anthony DeSantis, a district sales manager at plaintiff's Hartford branch, discussed with the defendant the sales representative's agreement as a condition of employment as he does whenever he speaks with a potential salesperson. The defendant made a copy of the agreement and stated he wanted to seek advice from his lawyer regarding the agreement. In the week prior to the defendant's commencement of employment with the plaintiff, DeSantis met with the defendant in the South Windsor facility and witnessed the defendant sign the agreement without any protest. In January of 1992, Noelle Cass, the human resources officer for the branch, performed an audit of all sales representative's agreements of current branch employees and saw defendant's agreement in a personnel file. The files containing the agreements were in a high traffic area in unlocked cabinets. In March of 1992, the files were moved and, in or around April of 1992 when she looked for defendant's file, it was missing. Furthermore, the plaintiff produced a receipt for the one hundred dollars paid to the defendant for signing the agreement. The plaintiff was unable to find the sales representative's agreement for another CT Page 11775 salesperson, Mr. Barbieri, who was hired the same day as the defendant, but Mr. Barbieri produced his signed agreement at trial.
The defendant acknowledged that he may have signed an agreement like the sales representative's agreement when asked to do so by a different sales manager, not Mr. DeSantis, after he started working for the plaintiff. The defendant also conceded that his memory of events and conversations during the period prior to his being hired is very "foggy" because he was in substantial pain and was taking medication for injuries sustained in a car accident. Based on the above evidence, the court finds that a sales representative's agreement was signed by the defendant in accordance with the plaintiff's usual business practice of requiring new sales representatives to sign the agreement as a condition of employment.
The plaintiff also presented sufficient evidence to prove that, despite a diligent search, the agreement was unavailable for production at trial. In this regard, the court finds that Ms. Cass personally checked for the agreement in the personnel files, she asked other managers, including Mr. DeSantis, to check their files for the agreement and she also spoke with personnel at the plaintiff's corporate headquarters in Maryland causing them to search their files. No one could find the document. Although the plaintiff was not able to produce the actual signed, written agreement or a copy containing the covenant not to compete, based on the evidence presented, the court finds that the parties did enter into a "sales representative's agreement" containing a non-solicitation restrictive covenant provision and, despite the plaintiff's reasonably diligent search, the agreement is presently unavailable.
Second, the plaintiff adequately proved the contents of the written document. A standard form may be admitted as an exhibit at trial to prove the contents of a missing document. See Connecticut Bank Trust Co. v. Wilcox, supra, 575; see also Central National Bank of New York v. Bernstein, supra (finding that the plaintiff proved the terms of the instruments by introducing photostatic copies). In the present case, the plaintiff introduced into evidence a copy of the standard sales representative's agreement regularly used by the plaintiff and signed by new sales representatives as a condition of employment with the plaintiff. By virtue of the standard form agreement, virtually identical in content, the court finds that the CT Page 11776 plaintiff proved the contents of the missing agreement and thereby, met the second part of its twofold burden.
Hence, even though the actual written document is missing, the court finds that a sales representative's agreement was signed in accordance with the usual practice of plaintiff's business and, therefore, the parties did enter into an agreement for a covenant not to compete.
 II.
THE RESTRICTIVE COVENANT DOES NOT SURVIVE THE TERMINATION AGREEMENT
"It is axiomatic that a party is entitled to rely upon its written contract as the final integration of its rights and duties." Zullo v. Smith, 179 Conn. 596, 601, 427 A.2d 409
(1980), citing Farmers Mechanics Savings Bank v. First Federal Savings Loan Ass'n, 167 Conn. 294, 302, 355 A.2d 260 (1974). "Where the language of the contract is clear and unambiguous, the contract is to be given effect according to its terms." Leonard Concrete Pipe Co. v. C. W. Blakeslee Sons, Inc., 178 Conn. 594,598, 424 A.2d 277 (1979), citing Collins v. Sears. Roebuck Co.,164 Conn. 369, 377, 321 A.2d 444 (1973). "The court will not torture words to impart ambiguity where ordinary meaning leaves no room for ambiguity." Zullo v. Smith, supra, citing Downs v. National Casualty Co., 146 Conn. 490, 494, 152 A.2d 316 (1959).
In the present case, the language of the termination agreement, dated March 13, 1992 and drafted by the plaintiff, is clear and unambiguous. Subsection 6 of the termination agreement reads as follows:
Entire Agreement
 This Agreement represents the complete agreement between the parties and the parties have not relied on any agreements, understandings or representatives. except to the extent set forth herein. The Agreement may not be modified, except upon the express written consent of the parties. (Emphasis added.)
The defendant and Mr. David Messenger, Vice President/General Manager of plaintiff's Hartford branch, both signed the written agreement providing for the defendant's termination of employment with JP Foodservice, Inc. The agreement specifically stated that CT Page 11777 their signatures signified that they read, understood and voluntarily agreed to its terms.
When the parties have reduced their agreement to a writing, the court needs to determine what intention is expressed in the language used and not what intention existed in the minds of the parties. Powel v. Burke, 178 Conn. 384, 387, 423 A.2d 97 (1979). "The words used by the parties `must be accorded their common meaning and usage where they can be sensibly applied to the subject matter of the contract.'" Leonard Concrete Pipe Co. v. C. W. Blakeslee Sons. Inc., supra, quoting Beach v. Beach,141 Conn. 583, 589, 107 A.2d 629 (1954). Here, the parties expressly stated that the agreement concerning the defendant's termination of employment was the "entire agreement" between the parties. Because the language of the termination agreement is plain, the court concludes that the parties expressly intended the written termination agreement to be the complete and final agreement between the parties.
"`It is, of course, fundamental, as a matter of substantive law, that the terms of a written contract which is intended by the parties to set forth their entire agreement may not be varied by parol evidence.'" Hanson Development Co. v. East Great Plains Shopping Center, Inc., 195 Conn. 60, 68, 485 A.2d 1296 (1985) (Shea J., dissenting), quoting Maier v. Arsenault, 140 Conn. 364,367-68, 100 A.2d 403 (1953). The parol evidence rule provides that "[w]hen two parties have made a contract and have expressed it in a writing to which they have both assented as the complete and accurate integration of that contract, evidence, whether parol or otherwise, of antecedent understandings and negotiations will not be admitted for the purpose of varying or contradicting the writing." 3 Corbin, Contracts 573, p. 357 (1960). Because the language agreed to by the parties clearly and specifically provides that the written termination agreement is the "entire" and "complete" agreement between the parties, evidence of prior agreements or negotiations, such as the earlier sales representative's agreement, is not admissible to vary the plain and unambiguous terms of the written termination agreement.
In addition, "[a] written agreement is integrated and operates to exclude evidence of the alleged extrinsic negotiations if the subject matter of the latter is mentioned, covered or dealt with in the writing. . . .; if it is not, then probably the writing was not intended to embody that element. . . ." Associated Catalog Merchandisers Inc. v. Chagnon, 210 Conn. 734, CT Page 11778 739, 557 A.2d 525 (1989). The subject matter of the March 13, 1992 termination agreement is the same as the earlier sales representative's agreement signed prior to commencement of employment which contained the non-competition restrictive covenant. Because both agreements involve the employment relationship between the parties, the later termination agreement is the final and complete integration of the rights and obligations of the parties.
Based on the foregoing discussion, the court concludes that a covenant not to compete existed between the parties; however, that agreement was integrated into the termination agreement, which by its terms contains the entire understanding of the parties and, thereby, supersedes all previous understandings, written or oral, between the parties.
Finally, because the restrictive covenant did not survive the March 13 agreement providing for the defendant's termination of employment, the court need not determine whether the covenant not to compete was reasonable, whether it was breached, and whether the plaintiff will be irreparably harmed if an injunction is not granted.
For the foregoing reasons, the plaintiff's request for injunctive relief with respect to the covenant not to compete is denied and judgment may enter in this case in favor of the defendant.
SCHALLER, J.