# WILLIAM B. KNAPP III *v.* TOWN OF STRATFORD*

Superior Court, Judicial District of Fairfield
File No. CV000378061 S

Memorandum filed June 28, 2002

*John M. Rodia*, for the plaintiff.

*John M. Florek*, for the defendant.

STEVENS, J. The plaintiff in this action, William B. Knapp III, is a former employee of the defendant, the town of Stratford. He instituted this action contesting the manner in which the defendant calculated his retirement pay and seeks damages, including a reformulation of the amounts due him under his pension. The matter was scheduled for a trial before the court. When the parties appeared, they agreed that the matter would be heard pursuant to stipulated facts. The facts of that stipulation are as follows:

"1. The plaintiff is a retired town of Stratford police officer, who retired at the rank of deputy chief of police.

"2. The defendant is a Connecticut municipality.

"3. Both the plaintiff and the defendant are subject to the provisions of General Statutes § 7-433c.

---

* Affirmed. *Knapp* v. *Stratford*, 266 Conn. 517, 832 A.2d 1179 (2003).

"4. After becoming employed as a police officer for the town of Stratford, the plaintiff learned that he suffered from a condition of hypertension.

"5. Pursuant to § 7-433c, the plaintiff made a claim against the defendant before the workers' compensation commission for benefits under § 7-433c.

"6. On February 1, 2000, the workers' compensation commission approved and entered a finding and award regarding the plaintiff's claim.

"7. Pursuant to that finding and award, the plaintiff was found to have a 9 percent permanent partial impairment of the cardiovascular system, based on his hypertension, and was awarded benefits pursuant to § 7-433c.

"8. Those benefits were to be payable on a weekly basis from the date of the plaintiff's maximum medical improvement, which was September 13, 1999, for a period of 70.2 weeks, or until February 6, 2001. The rate of payment was $296.99 per week.

"9. On February 10, 2000, pursuant to the finding and award, the plaintiff was paid $8236.79, which represented weekly payments of $296.99 from September 13, 1999, to February 10, 2000.

"10. On March 3, 2000, the plaintiff applied for, and was awarded, a commutation of the weekly benefits payable to the plaintiff pursuant to the finding and award into a single lump sum payment in the amount of $13,194.88. That payment was paid to the plaintiff by the defendant on March 10, 2000.

"11. At the time the defendant paid to the plaintiff the commutated amount of his heart and hypertension benefits, the defendant deducted federal and state withholding taxes from the commutated amount.

"12. On May 31, 2000, the plaintiff retired as a police officer with the town of Stratford based on his years

of service with the town, otherwise referred to as 'super-annuation' in the relevant pension documents.

"13. At the time of his retirement, the plaintiff's pension benefits were governed by [a document titled] 'A Retirement Plan for Employees of the Town of Stratford as Revised Effective January 1, 1999' (retirement plan), as amended by the terms of correspondence dated July 9, 1991, on the plaintiff's elevation to the position of deputy chief.

"14. Pursuant to the terms of [the] plaintiff's employment as deputy chief set forth in the correspondence of July 9, 1991, for the duration of [the] plaintiff's employment, his benefits were to run parallel with the supervisors agreement.

"15. Section IV A of the supervisors union contract (exhibit six) states that on retirement based on years of service, a member shall receive a pension equivalent to 2.4 percent of his average annual compensation multiplied by his number of years of his service to the town.

"16. Section 1 (B) (3) of the supervisors union contract (exhibit six) defines 'average annual compensation' as 'the annualized average of total compensation for the twenty-four (24) months of service immediately preceding the Member's retirement date. . . .'

"17. Section 1 (B) (2) of the supervisors union contract (exhibit six) refers back to the retirement plan (exhibit four) in defining the term 'compensation.'

"18. Section B (1) of the retirement plan defines 'compensation' of a member as 'the total compensation paid to him by the Town as reportable for determining income for federal income tax purposes . . . .'

"19. The definition of 'compensation' as set forth in the retirement plan has existed in substantially the same language since at least March 9, 1970.

"20. On or about March 9, 1970, an ordinance providing for the adoption of a 'Retirement Plan For Employees of The Town of Stratford' was adopted by the town council of the town of Stratford as a town ordinance.

"21. Prior to 1994, the defendant had not deducted federal or state withholding taxes from heart and hypertension benefits paid to police officers pursuant to § 7-433c on the basis that these payments were not considered taxable income.

"22. In 1994, the United States Tax Court, in *Green* v. *Commissioner*, 102 T.C.M. (CCH) 817 (1994), a case dealing directly with § 7-433c (Connecticut's heart and hypertension statute), held that payments made pursuant to § 7-433c were not excluded from the income of the payee and were, therefore, taxable.

"23. Subsequent to *Green*, the defendant began deducting federal and state withholding taxes from heart [and] hypertension benefits paid to police officers pursuant to § 7-433c and reporting such payments as income."

The crux of the parties' dispute is premised on the town's refusal to consider the disability benefits received by the plaintiff as part of the calculation of his retirement benefits. The determinative issue is whether the term compensation, as defined under the supervisors union contract, includes payments received as heart and hypertension disability benefits. The union contract refers to the defendant's retirement plan for the definition of that word. The retirement plan defines compensation in relevant part as "the total compensation paid to him [the employee] by the Town as reportable for determining income for federal income tax purposes . . . ."

The plaintiff argues that because disability benefits are reported as income for federal income tax purposes,

they should be included in the calculation of the retirement benefits. The defendant disagrees. It insists that historically, disability benefits were not subject to federal taxes and that to include them in the calculation of retirement benefits at this time would be inconsistent with the intent of the drafters of the original town ordinance. For the following reasons, the court agrees with the plaintiff and renders judgment accordingly.

## DISCUSSION

The court agrees with the plaintiff that for the purposes here, the definition of compensation is plain and unambiguous. Because compensation is defined in relevant part in § B (1) of the retirement plan as "the total compensation paid to [the employee] by the Town as reportable for determining income for federal income tax purposes," the payments to be used for determining retirement benefits include all compensation received by the employee that is subject to federal taxation. The obvious goal of that provision is to include within the definition of compensation all items of income that are required to be reported for federal taxes and to exclude from that definition those employee benefits that are not subject to federal taxation. As the disability benefits at issue here are subject to federal taxes, they are to be included in the calculation of the retirement benefits.

The defendant's counterargument may be summarized as follows. In 1970, the Stratford town council adopted a town pension ordinance called an "An Act Concerning Pensions for Employees of the Town of Stratford, Connecticut." That ordinance was repealed in 1994 when the defendant entered into the collective bargaining agreement that now provides for employee pensions through the supervisors union contract at issue in this case. The defendant argues that one must look to the ordinance for the appropriate interpretation of the word "compensation" because the ordinance

effectively became the town's "retirement plan." The language used to define the word compensation first appeared in the ordinance, and that language has continued unchanged in the retirement plan.

When the ordinance was enacted in 1970, disability benefits were not taxed as income, but the law on that subject changed in 1994. In that year, the United States Tax Court found that those benefits are subject to federal taxes. *Green* v. *Commissioner*, supra, 102 T.C.M. (CCH) 817. Consequently, the defendant argues that the term "compensation" must be defined in light of the law that existed when the town ordinance was enacted in 1970. According to the defendant, because disability benefits were excluded from taxable income and were, therefore, outside the definition of "compensation" in 1970, such benefits should be excluded from the definition now. The defendant insists that this result is required to ensure that the provision is interpreted in a manner that is consistent with the intent of the drafters of the ordinance. The defendant reasons that the drafters are presumed to have known that disability benefits were excluded from taxable income under then existing law, and they must have expected the term "compensation" also to reflect that exclusion. For the following reasons, the defendant's attenuated argument is rejected.

First, although the defendant attempts to emphasize the perceived legislative intent behind the ordinance it enacted in 1970, that ordinance has been repealed. The controlling document is the retirement plan made applicable by the parties' collective bargaining agreement, which became effective on January 1, 1999. If the court were to look to the drafters' intent, it would appear more appropriate to ask what the intent of the parties was when they agreed to incorporate the retirement plan into the collective bargaining agreement in 1999. Certainly at that time, disability benefits were subject

to federal taxation, and the parties presumably were aware of that because that had been the state of the law since 1994. Consequently, from that perspective, the controlling analysis may more accurately be described as one involving canons of contract interpretation, rather than statutory interpretation.

Additionally, the court need not speculate about the legislative intent of the drafters of the 1970 ordinance because, as previously stated, the language of the parties' agreement, as reflected in the retirement plan, is clear and unambiguous. "Although ordinarily the question of contract interpretation, being a question of the parties' intent, is a question of fact . . . [w]here there is definitive contract language, the determination of what the parties intended by their contractual commitments is a question of law. . . . When only one interpretation of a contract is possible, the court need not look outside the four corners of the contract." (Internal quotation marks omitted.) *Bentz* v. *Halsey*, 54 Conn. App. 609, 616, 736 A.2d 931 (1999); see generally *Connecticut Union of Telephone Workers* v. *Southern New England Telephone Co.*, 148 Conn. 192, 199–201, 169 A.2d 646 (1961). Contrary to the defendant's position, that rule of construction was not altered by the Supreme Court's decision in *State* v. *Ellis*, 197 Conn. 436, 497 A.2d 974 (1985), on appeal after remand sub nom. *State* v. *Paradise*, 213 Conn. 388, 567 A.2d 1221 (1990). In that case, the court found it necessary to explore the legislative intent to discern the appropriate meaning of the phrase "crimes punishable by death" because the meaning of the phrase was unclear in the statutory scheme. Because the definition of "compensation" in the retirement plan is clear and definitive, the court is not required to examine extrinsic evidence to resolve the question of the parties' intent. See generally *Maier* v. *Arsenault*, 140 Conn. 364, 367–68, 100 A.2d 403 (1953).

Moreover, even if the court were inclined to examine and to emphasize the intent of the drafters of the ordinance, the record in this case does not contain any evidence that the drafters had the intent that the defendant wants to ascribe to them. The defendant has not offered any legislative history to support its view of the drafters' intent. As previously discussed, an alternative view that is just as reasonable as, if not more reasonable than, the defendant's position, is that the drafters intended that all the income that an employee receives, in whatever manner or form, that is reportable for federal income tax purposes should be included in calculating the employee's retirement benefits. The income and benefits of an employee may vary over the years in both quantity and quality. Nevertheless, under the definition of compensation at issue here, as an employee's taxable income changes, those changes are to be reflected in the calculation of the employee's retirement benefits. The defendant may be correct that in 1970, the drafters could not have envisioned the full monetary impact that definition would have some thirty years later, but that does not mean that they meant something other than what they actually said. Stated differently, the defendant would have the court craft language onto the ordinance so that compensation would be defined as income paid to the employee and reportable for federal income tax purposes "as defined under existing law." The ordinance, however, does not so limit its application, and the drafters certainly could have expressly provided for such a limitation if that were their actual intent. In short, in construing the retirement plan, the court should not add terms to the parties' collective bargaining agreement through interpretation.

Finally, the defendant argues that even if there is substance to the plaintiff's argument that the disability payments are within the retirement plan's definition of compensation, any such definition should be limited to

amounts representing thirty-two weeks at the weekly compensation rate ($269.99 a week), and should not be extended to the lump sum, commutation payment of $13,194.88 that the plaintiff received. According to the defendant, such an application would constitute a "windfall" to the plaintiff. The defendant concedes, however, that it reported that lump sum payment as taxable income to the plaintiff. Therefore, the lump sum payment certainly was no "windfall" to the plaintiff to the extent that he was required to pay taxes on that money, and the payment clearly falls within the plain meaning of compensation as defined under the retirement plan. There is no reasoned basis to include the weekly benefits in the calculation of the retirement benefits and to exclude the lump sum commutation payment when both types of payments are reported as income for federal income tax purposes and fall within the definition of compensation under the retirement plan.

## CONCLUSION

Therefore, for all the foregoing reasons, judgment is rendered in favor of the plaintiff and against the defendant. The defendant is ordered forthwith to reformulate the amount of the plaintiff's pension benefits consistent with this decision. A hearing is hereby scheduled for Tuesday, July 16, 2002, at 9:30 a.m. on the reformulation and any amounts owed to the plaintiff based thereon, unless prior to that date the parties file a stipulation regarding the same.[1]

---

[1] After a hearing on July 16, 2002, the court issued the following additional findings and orders as part of the final judgment: (1) Based on the court's ruling, the arrearage owed to the plaintiff by the town is $14,328.09 less $3353.95 in contributions owed or $10,974.14; (2) based on the court's ruling, the plaintiff's monthly pension is increased to $5238.79 per month.